SLUSH *et al.* v. FOXWORTH.*

(Division A. Feb. 21, 1927. Suggestion of Error Overruled April 4, 1927.)

[111 So. 841. No. 26009.]

1. LOGS AND LOGGING. *"Timber" and "wood" in unambiguous timber deed may not be limited to trees of certain sizes and fallen trees.*
   Where timber deed conveyed all timber and wood and sunken saw logs, excepting fruit trees, on lands, chancellor erroneously limited "timber" to trees of certain varieties and sizes, and "wood" to dead portions of fallen trees customarily used for fuel, since language of deed was unambiguous and embraced all timber and wood without limitation.

2. EVIDENCE. *Oral testimony held inadmissible to limit or vary description in unambiguous timber deed.*

Oral testimony *held* inadmissible to limit or vary terms of descrip-
tion as written in timber deed conveying all timber and wood
and sunken saw logs, excepting fruit trees, since description of
property conveyed therein was not ambiguous.

*Corpus Juris-Cyc. References: Evidence, 22CJ, p. 1125, n. 31; p.
1263, n. 14; Logs and Logging, 38CJ, p. 159, n. 62.

APPEAL from chancery court of Marion county.
HON. T. P. DALE, Chancellor.

Two separate suits by E. W. Foxworth against Mat-
thew Slush and others, consolidated and tried as one.
Decree for complainant, and defendants appeal. Re-
versed and decree rendered.

*Mounger & Mounger,* for appellants.

These parties used the words intending that they
should be understood according to their ordinary mean-
ing and in accordance with their common acceptation.
If the parties used the words with the intent that they
should be understood, as defined in the dictionary, the
same as defined by Webster and as quoted by the chan-
cellor, then the conduct of the parties in using these words
would be reasonable; otherwise, it would not be rea-
sonable; but, on the contrary, would have been positively
wrong. *The Newsome case,* 129 Miss. 167.

The laws of Mississippi and the courts of Mississippi
had led Mr. Hennington, as a lawyer, to understand and
to trust that the words "timber" and "wood" were good
words and had some definite meaning. Chapter 41, Laws
of 1898, gave authority to boards of supervisors to sell
timber on sixteenth section lands. By the language
there used, they recognized that timber might be classi-
fied as merchantable and unmerchantable; also, as pine
and not pine; and also that "timber" might be one thing
and "wood" another.

The problem before the chancellor in this case was sim-
ply to place a construction on the deed, whose terms

were plain and unambiguous. We submit that the chancellor was in error in overlooking the fact that Mr. Hennington used the words "timber" and "wood" in connection with other words, and also in error in failing to give any force of meaning whatever to the word "wood."

*Hathorn & Williams,* for appellee.

Counsel contend that the expression "all the timber and wood of any and all kinds standing, lying and being" on the lands taken in connection with the words "excepting, however, the fruit trees on said land" makes the term "timber" and "wood" as used in the deed definite and certain, freed from all uncertainty and ambiguity, and renders parol testimony inadmissible to explain the meaning of the words as used in the deed, or the sense in which they were used or intended to be used by the parties to the deed.

Upon the question of the meaning of the word "timber" as used in the deed before this court in *Kerl* v. *Smith,* 51 So. 3, this court held that the said term is not so accurate a designation of what was sold as to preclude investigation as to what was meant by it in that ambiguous contract and that parol testimony was admissible to explain what kind of timber was sold. See, also, *Vinegar Bend Lumber Co.* v. *Churchwell,* 86 So. 299; *Ladner* v. *Ingram-Day Lbr. Co.,* 100 So. 369; *Salmen Brick & Lbr. Co.* v. *Wheat,* 103 So. 511; *Smith Lbr. Co.* v. *Jernigan et al.* (Ala.), 64 So. 300.

From the foregoing authorities it is seen that this court has definitely decided and settled the proposition that the word "timber" as used in a conveyance of "timber" is an indefinite, uncertain, and ambiguous term; and that the said term may be explained, made certain, rendered definite, and unambiguous, by parol testimony. Moreover, by the use of the comprehensive word "all" in connection with the word "timber," the term is rendered no less certain, definite, and unambiguous; but

may be explained by oral testimony designed to make it certain, definite, and unambiguous, and by such testimony may be shown to mean only "merchantable timber" or "merchantable pine timber."

This court, so far as we know, has never decided a case in which it has given its interpretation of the meaning of the word "wood" as used in a deed of this kind. However, the cases cited above in which the court has considered the meaning of the word "timber" as used in such a deed and the reasoning set forth in those decisions apply with equal force to the word "wood." The word "wood" unexplained is just as indefinite, uncertain, and ambiguous when used in such a deed as is the word "timber" when used therein.

A sufficient explanation, to our minds, for the special clause excepting fruit trees out of the deed can be found in the fact, as alleged in the bill of complaint and as abundantly shown by the proof, that there were a great many fruit trees on the land, such as walnut, pecan, cherry and persimmon, which were merchantable timber thereon at the date of the deed; and since even we concede that the term "timber" as used in the deed conveyed all of the merchantable timber on the land, it was necessary to except fruit trees in order to prevent the fruit trees which were merchantable timber from passing under the deed.

The words "timber" and "wood" as used in the deed are not rendered definite, certain, and unambiguous by the clause in the deed excepting the fruit trees.

*Rawls & Hathorn* and *Mounger & Mounger,* in reply for appellants.

The rule which we think is applicable to this case is well stated in 18 C. J., under the subject "Deeds," section 217. See, also, *Lowery* v. *Williams,* 109 So. 670.

In accordance with the last-named authority we insist that it is not a question of construing such words

as "saw log timber" or "basket timber" or "timber," but the question is of construing all the words used descriptive of the timber together, which were as above set out; and we insist that when these words are read together, they are entirely free from all ambiguity and uncertainty, and the court had no right to consider what the parties may have secretly meant, and had no right to admit testimony as to what they meant, but the problem, was as to the meaning of the words used and this meaning was so plain that an interpretation of the same did not call for extrinsic evidence.

Argued orally by *Henry Mounger* and *C. V. Hathorn,* for appellants.

Cook, J., delivered the opinion of the court.

The appellee, E. W. Foxworth, filed a bill in the chancery court of Marion county against Matthew Slush and others, alleging that the defendants wrongfully cut and removed from the lands of the appellee certain hardwood timber; and he also filed a bill against Matthew Slush and other and different codefendants, alleging that they wrongfully cut and removed from the same lands certain pine timber belonging to the appellee. These suits were consolidated and tried as one.

The bills of complaint alleged that the appellee acquired title to the land in question by inheritance from the estate of his father, J. M. Foxworth, deceased, and by deeds from the other heirs at law of the said J. M. Foxworth, deceased, and showed that the defendants cut the timber under a claim of right evidenced by a certain timber deed executed by J. M. Foxworth and Sam Foxworth, on the 2d day of May, 1913, in which the words descriptive of the timber conveyed were as follows:

"All the timber and wood of any and all kinds standing, lying, and being upon the following described lands,

situate and being in Marion county, state of Mississippi, to-wit: [Describing lands], including all sunken saw logs in the water on said lands, excepting, however, the fruit trees on said lands.''

The bills of complaint alleged that this deed conveyed and intended to convey only the trees on said land at the date of said deed which were then in that locality customarily used and considered suitable for manufacture and sale; that the word ''timber,'' as used in the said deed, meant only those trees on said land at the date of said deed which were then in that locality customarily used and considered suitable for manufacture and sale; that the said term ''wood,'' as used in said deed, did not convey or intend to convey any trees or portions of trees on said lands, other than those dead portions of fallen trees thereon which were then and there customarily used and considered suitable for making fuel; that no pine trees of the variety known as ''old field pines,'' regardless of size, were covered by the word ''timber,'' or were intended to be conveyed; and that the word ''timber,'' as understood and used in the locality of said lands at the date of said deed, and as used therein, and as fixed by common understanding and custom of the community at the date of said deed, meant and was understood to mean, and embraced and was understood to embrace, only those trees on said land of the varieties and sizes following: Hardwood trees fourteen inches or more in diameter at the small end of a log twelve feet or more in length; dogwood and persimon trees large enough to make bolts, clear of knots, three feet long, four inches in diameter, for manufacture into shuttle blocks; and pine trees, other than ''old field pine,'' which measured twelve inches or more in diameter at the small end of a saw log sixteen feet or more in length; and that no other trees were embraced or intended to be embraced within the description of the deed.

At the trial, over the objections of appellants, oral testimony was admitted to show that the words ''tim-

ber'' and ''wood,'' as used.in the deed, each had a re-stricted meaning; that the word ''timber'' was intended to and did convey only trees which were, at the date of the deed and in the locality, customarily used and con-sidered suitable for manufacture and sale, and that only trees of the varieties and sizes above stated were so used and considered suitable for such purposes; and also that the word ''wood'' was intended to and did convey only those dead portions of fallen trees which were then cus-tomarily used for and considered suitable for fuel.

At the conclusion of the trial the chancellor entered a decree adjudging that the above-mentioned deed con-veyed only those pine trees on the land therein described which, at the date of the deed, measured eight inches or more in diameter, eighteen inches above the ground, and also that it conveyed only those trees of the varieties other than pine which measured in diameter at the date of said deed as follows, to-wit:

''All ash ten inches in diameter and over at a point eighteen inches above the ground; all persimmon eleven inches in diameter and over at a point eighteen inches above the ground; all hickory twelve inches as in diame-ter and over at a point eighteen inches above the ground; all oak twelve inches in diameter and over at a point eighteen inches above the ground; all cypress twelve inches in diameter and over at a point above the swell of the butt; all gum fourteen inches in diameter and over at a point above the swell of the butt; all other varieties of hardwood twelve inches in diameter and over at a point eighteen inches above the ground.''

The decree further adjudged that the complainant was the owner of all the trees on the land which, at the date of the deed, measured less than the amounts so found and fixed by decree, and awarded as against the sev-eral defendants a recovery for the value of the trees cut and removed by them which were of the size and varie-ty so found to belong to the complainant. Under the view we have reached as to the proper construction of

the deed, the other provisions of the decree are not here material.

We think the chancellor erred in holding that the description of the property conveyed in this deed is ambiguous, and that the word "timber" therein should be limited to trees of certain varieties and sizes, or such as were merchantable at the date of the deed, and that the word "wood" therein should be limited to such portions of fallen trees as were customarily used for fuel in the community where the land was located. It is difficult to conceive of language more comprehensive or more inclusive than the description of the property as contained in this deed. It embraces all timber and all wood without any limitation, except the fruit trees on the land, and this description of "all timber" and "all wood" is enlarged by the words "of any and all kinds standing, lying, and being upon" the lands. In the case of *Great Southern Lumber Co.* v. *Newsom Bros.,* 129 Miss. 158, 9 So. 864, this court approved Webster's definition of timber as being "that sort of wood which is proper for buildings or for tools, utensils, furniture, carriages, fences, ships, and the like," and also cited with approval the case of *U. S.* v. *Soto,* 7 Ariz. 230, 64 P. 419, in which timber is defined to be "all kinds of wood used either for building purposes or in the manufacture or construction of useful articles."

In our opinion, the description, "all the timber and wood of any and all kinds standing, lying, and being" upon the lands, conveyed all the trees thereon which would make timber within these definitions, and that this description cannot be limited by oral testimony to such trees as were customarily used and considered suitable for manufacture and sale in the particular locality. Neither can the descriptive terms, "all wood of any and all kinds standing, lying and being on the land," be so limited to such wood as was customarily used for fuel in that community. Our conclusion in this regard is strengthened by the fact that the broad description of

the property contains a specific exception of the fruit trees on the land, thus indicating that the grantor considered and fixed the only exception necessary and desired.

To support the decree of the chancellor the appellee relies on the cases of *Kerl* v. *Smith*, 96 Miss. 827, 51 So. 3, and *Vinegar Bend Lumber Co.* v. *Churchwell*, 123 Miss. 807, 86 So. 299; but in neither of these cases was the description of the property conveyed so inclusive as the terms of the description here involved. In the Kerl case, the word "timber," used alone and unexplained in a contract, was held to be "not so accurate a designation of what was sold as to preclude investigation as to what was meant by it in this ambiguous contract;" while in the Churchwell case it was held that, in a deed conveying "all of the pine timber" situated on described land, the meaning of the term "timber" is indefinite, and parol evidence is admissible to show what the term means, but neither of these cases is controlling in the construction of the terms of the description here under consideration.

We conclude, therefore, that oral testimony was inadmissible to limit or vary the terms of the description as written in the deed, and that all recovery against any of the defendants for cutting and removing timber should have been denied. The deed from J. M. Foxworth to Matthew Slush conveyed to the grantee, his successors or assigns, rights of way for wagon roads, tram roads, and log railroads, for the purpose of cutting and removing the timber, and obligated them to pay to the grantor, or his successors or assigns, any and all damages done to the cultivated fields and crops, and the chancellor found upon the proof that the defendant Quaker Oats Company wrongfully made roads through the cultivated fields of the appellee, and thereby damaged him in the sum of one hundred dollars, and allowed a recovery of this sum, with interest for two and one-half years at six per cent., aggregating one hundred fifteen dollars. We are unable to say that this finding of fact

is manifestly wrong. Consequently, the decree of the court below will be reversed, and a decree entered here dismissing the bill as to all the defendants, except the Quaker Oats Company, and a decree entered here against that company for the item of one hundred fifteen dollars, damage to the cultivated fields of the appellee, with one-fifth of the costs of this appeal to be taxed against it, and the remaining four-fifths against the appellee.

*Reversed, and decree here.*