Mrs. C. H. KILFOYLE, Appellant,

v.

W. M. WRIGHT and Gulf Oil Corporation, Appellees.

W. M. WRIGHT, Appellant,

v.

Mrs. C. H. KILFOYLE, Appellee.

No. 19102.

United States Court of Appeals
Fifth Circuit.

March 20, 1962.

Albert J. Tully, Mobile, Ala., Holberg, Tully, Hodnette & Mobley, Mobile, Ala., of counsel, for appellants.

W. Dewitt Reams, Sam W. Pipes, III, Mobile, Ala., Charles C. Richmond, Sr., Wm. R. Harris, Jackson, Miss., Irwin W. Coleman, Jr., Raymond A. Corcoran, Mobile, Ala., C. C. Richmond, Jackson, Miss., Lyons, Pipes & Cook, Mobile, Ala., of counsel, for appellee Gulf Oil Corporation.

Before RIVES and WISDOM, Circuit Judges, and CARSWELL, District Judge.

RIVES, Circuit Judge.

On motions for summary judgment the district court held that a deed from Wright to Mrs. Kilfoyle dated September 2, 1943:

(1) Included in the described lands Lot 13, Block 23 of the Townsite of Citronelle, Alabama.

(2) Conveyed to Mrs. Kilfoyle for the period described the entire royalty interest in gas, oil and other minerals, and not ownership of the minerals themselves as they are imbedded in the ground.

Most of the pertinent facts and the reasons for the holdings are clearly and ably stated in the opinion of the learned district judge, reported as Kilfoyle v. Wright, S.D.Ala., 1960, 188 F.Supp. 899. The first issue as to whether the lands described in the deed included the said Lot 13, Block 23, should, we think, be determined on a hearing on the merits rather than on motion for summary judgment. In all other respects we affirm the judgment of the district court.

The description typed into the printed deed form is as follows:

"LOTS 15, 17 & 19 in Block 23, Lots 14, 16, 18, 5 & 7, in Block 24, Townsite of Citronelle, Alabama, and more particularly described as follows: BEGINNING at the N.E. Corner of S.W. ¼ of NE ¼, Section 25, Township 2 North, Range 3 West, running South 1400 feet; THENCE East 630 ft.; THENCE North 300 ft.; THENCE East 630 ft.; THENCE North 300 feet; THENCE East 630 ft.; THENCE North 800 ft.; THENCE West 1280 ft. to beginning, containing in all 35 acres, more or less; and being the same land conveyed by Serafino Brock & wife, Constanza Brock, to Benjamin Harris by Warranty Deed recorded in Deed Book No. 244, page 581, Mobile County, Alabama, Records, and conveyed by said Benjamin Harris to W. M. Wright on August 24, 1943, by deed recorded in said Records of Mobile County, Alabama; _____"."

In determining the identity of the property, as with other terms of a deed, the purpose and end of construction and of rules of construction is to ascertain what the parties intended. The general rule is thus expressed in 26 C.J.S. Deeds § 100g.:

"In construing the deed to determine the identity of the property, reference may be had to the state of facts existing when the deed was made, to ascertain the intention of the parties, and the court will place itself as nearly as possible in the position of the parties and interpret the language in the light of the surrounding circumstances."

That general rule prevails in Alabama.

"And it is the well-settled rule that, where the language of a deed is ambiguous, the intention of the parties may be ascertained by a consideration of the surrounding circumstances existing at the time of its execution, and for this purpose the court will place itself as nearly as possible in the position of the parties when the instrument was executed. 18 Corpus Juris, p. 260. To ascertain the intent in respect to the property conveyed, reference may be had to the state of facts as they

existed when the instrument was made, and to which the parties may be presumed to have had reference. 18 Corpus Juris, 280. Of course the entire instrument is to be considered, and, if it can be reasonably done, and not inconsistent with the general intent of the whole instrument, effect and meaning should be given to every clause, word, and expression, so that the deed may operate according to the intention of the parties. 18 Corpus Juris, 258." Nettles v. Lichtman, 1934, 228 Ala. 52, 152 So. 450, 452, 91 A.L.R. 1455. See also, W. T. Smith Lumber Co. v. Fox, 1935, 231 Ala. 159, 164 So. 214, 215; Scott v. McDonald, 1947, 249 Ala. 464, 31 So.2d 351, 353.

■ We agree with the district court that the language of the description of the deed is ambiguous. It contains four methods of reference to the property included: (1) an enumeration by lot and block number; (2) a metes and bounds description; (3) a statement of approximate acreage; (4) a reference to other deeds conveying the same land. Briefly considering each of these four methods, we observe: (1) The enumeration of lot and block numbers does not mention Lot 13, Block 23. (2) The metes and bounds description when applied literally as written to the map of the Town of Citronelle is obviously erroneous since it would include no part of any of the enumerated lots except a narrow strip along the north side of Lot 19, Block 23. Mrs. Kilfoyle urges that there is an obvious typographical error in the beginning point of the metes and bounds description, which she insists should be the SE instead of the NE corner of SW¼ of NE ¼ of Section 25, Township 2 North, Range 3 West. If the beginning point is so changed, then the metes and bounds description would include Lot 13, Block 23, but would not include small strips of some of the other lots, particularly Lots 14, 5 and 7 of Block 24, and the line would not connect up along the north boundary of Lot 19, Block 23. The metes and bounds description does not therefore furnish any exact and accurate description of the enumerated lots either as including or as excluding Lot 13, Block 23. (3) The statement of acreage is, on its face, only an approximation, "35 acres, more or less." Wright's brief computes the acreage of the enumerated lots as 42.63 acres without including Lot 13, Block 23, which contains 4.10 acres. (4) The two deeds to which the description makes reference as conveying the same land each describe the property by one method only, that is by lot and block number, and include Lot 13, Block 23 along with the other lots described by lot and block numbers in the deed under consideration. It is, therefore, something of an understatement to say that the description of the property in the present deed is ambiguous.

The evidence on the motion for summary judgment showed that the deed was prepared by Mrs. Kilfoyle on a printed form selected by her, and into which she typed a description of lands furnished to her by Wright. Wright did not testify, and Mrs. Kilfoyle did not remember whether Wright gave her the description orally over the telephone or furnished it to her either in a separate writing or in one or both of the earlier deeds to which reference is made. There was no showing that Mrs. Kilfoyle ever saw the lands intended to be described, or attempted to trace their boundary.

The deed recites a purchase price of "Ten Dollars ($10.00) and other good and valuable considerations." Mrs. Kilfoyle had forgotten the amount of the actual purchase price, and whether that amount was calculated on a price per acre or in an agreed lump sum. Mrs. Kilfoyle introduced a letter which Wright had written to her on November 26, 1955, some twelve years after the deed was executed, and in which he said: "The Lots that you have the Royalty under on this drilling site is (sic) Lots 19, 17, 15 and 13 Block 23 and Lots 18, 16, 14 Block 24. It lokks (sic) as if you have all the Royalty under this Site except 5 acres and ⅛ minerals under Lot 19 Block 23." Wright did not undertake to explain this

letter. Gulf Refining Company had submitted to Mrs. Kilfoyle a proposed ratification of Wright's oil, gas and mineral lease to it which described the property as including Lot 13, Block 23.

With all of this evidence, if the judgment had been entered at the end of a trial on the merits it may very well be that we could not set aside as clearly erroneous a finding of fact that Lot 13, Block 23 of the Townsite of Citronelle, Alabama, was included in the lands described in the deed. See Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. On the other hand, we do not think that the evidence is so clear and convincing as to show the absence of any genuine issue as to this fact. The difference lies in the burden of proof on a motion for summary judgment, which is much more strict than that on a trial on the merits.

"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy this burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Since it is not the function of the trial court to adjudicate genuine factual issues at the hearing on the motion for summary judgment, in ruling on the motion all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. And the papers supporting movant's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the movant has satisfied his burden."

6 Moore's Federal Practice, 2d ed., pp. 2123–2126. See also Barron & Holtzoff, Federal Practice & Procedure, Vol. 3, § 1235. On the issue as to whether the lands described in the deed included Lot 13, Block 23 of the Townsite of Citronelle, Alabama, we hold that the district court erred in granting Mrs. Kilfoyle's motion for summary judgment, and we direct that that issue be determined after a trial on the merits.

On the remaining issues we are in full agreement with the opinion and judgment of the district court. At the risk of repetition, we add a few thoughts to what has already been well said by the district judge.

While not a lawyer, Mrs. Kilfoyle was an experienced legal secretary and had done considerable trading, purchasing in her own behalf of mineral interests and royalties. She admitted that by 1943 she was "quite familiar with the distinction between a royalty and a mineral interest." She selected and prepared the form on which the deed was executed. That form is captioned in its top margin "91—Royalty Deed (Non-participating) Texas Standard Form." The interest conveyed is described as "my undivided entire royalty interest in and to all of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in other minerals in and under and that may be produced and mined from the following described lands * * *."

At the time of the execution of the deed, the land was under an oil lease which has since expired. Oil is now being produced from the properties under subsequent oil leases executed by Wright to Gulf Refining Company.

The deed from Wright to Mrs. Kilfoyle further provides:

"Said lands, or portions thereof, being now under oil and gas lease executed in favor of record owner it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes my entire one-eighth (⅛th) undivided interest (or ¾ths of my interest) of all the oil royalty, and gas royalty, and casinghead gas and

gasoline royalty, and royalty from other minerals or products, due and to be paid under the terms of said leases. And it is further understood and agreed that notwithstanding the Grantee does not by these presents acquire any right to participate in the making of future oil and gas mining leases on the portion of said lands not at this date under lease, nor of participating in the making of future leases, should any existing or future leases for any reason become cancelled or forfeited, nor of participating in the bonus or bonuses which Grantor herein shall receive for any future lease nor of participating in any rental to be paid for the privilege or deferring the commencement of a well under any lease, now or hereafter;

"NEVERTHELESS, during the term of this grant, neither the Grantor nor the heirs, administrators, executors and assigns of the Grantor shall make or enter into any lease or contract for the development of said land or any portion of same for oil, gas or other minerals, unless each and every such lease, contract, leases or contracts, shall provide for at least a royalty on oil of the usual one-eighth to be delivered free of cost in the pipe line, and a royalty on natural gas of one-eighth of the value of same when sold or used off the premises, or one-eighth of the net proceeds of such gas, and one-eighth of the net amount of gasoline manufactured from natural or casinghead gas; and in the event Grantor, or the heirs, administrators, executors and assigns of the Grantor, or as in the status of the fee owners of the land and minerals, or as the fee owner of any portion of said land, shall operate and develop the minerals therein; Grantee herein shall own and be entitled to receive as a free royalty hereunder, (1) My undivided entire royalty of all the oil produced and saved from the premises delivered to Grantee's

credit free of cost in the pipe line, (2) An undivided entire royalty interest and portion of the value or proceeds of the sales of natural gas when and while the same is used or sold off the premises, (3) An (sic) My undivided interest * * * of the net amount of gasoline or other products manufactured from gas or casinghead gas produced from wells situated on the premises, during the term hereof."

■ The foregoing language is too clear to admit of doubt that the royalty interest rather than ownership of the minerals themselves as imbedded in the ground was the interest intended to be conveyed by the deed. The only expression in the deed which tends to a contrary meaning are the words immediately following the typed description, "together with the right of ingress and egress at all times for purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom." In examining the identical C–91 Texas Standard Form and commenting upon that provision, one of the leading authorities on Texas oil law has said:

"It is believed that the provision in the C–91 form for ingress and egress for the purposes therein stated is inconsistent with and repugnant to all of the other provisions thereof. It is suggested that the courts will hold that the C–91 form creates a mere royalty interest." Lee Jones, Jr., Non-Participating Royalty, 26 Tex.L.Rev. 571 (1948).

It is true that the Supreme Court of Alabama in McCall v. Nettles, 1948, 251 Ala. 349, 37 So.2d 635, held that a reservation of fifty per cent of all rentals *and* royalties derived from oil, gas and mineral leases should be construed as reserving an interest in the minerals in the ground. The present deed does not in terms grant rentals, but royalties only, and its provisions are otherwise much more explicit than those in McCall v. Nettles, supra. Further, while the reservation in that case was for an unlimited

period, the grant in the present deed is limited to "a period of 20 years from date hereof and as long thereafter as oil, gas or other minerals, or either of them, is produced or mined from the lands described herein, in paying or commercial quantities."

■ Mrs. Kilfoyle further insists that the exclusive leasing power retained by Wright is invalid because it is a power not coupled with an interest. The case upon which she particularly relies, Dallapi v. Campbell, 1941, 45 Cal.App.2d 541, 114 P.2d 646, is not in point. In that case the owner of a subdivision attempted to reserve the perpetual power to execute oil and gas leases as to lots, the full fee simple title to which was conveyed subject to such reserved power. The court struck down the reservation as violative of the rule against perpetuities. In the present case, in addition to reserving the exclusive leasing power Wright retained ownership of the surface and valuable rights in the minerals, including: (1) the right to drill, upon termination of the existing lease; (2) the right to receive bonuses for execution of new leases; (3) the right to receive delay rentals from existing and future leases; (4) the right of reversion after expiration of royalty grant of "20 years and for so long thereafter as oil, gas or minerals are produced in paying quantities." Wright's power to lease is, therefore, coupled with ownership of the surface and substantial rights in the minerals. Such an exclusive power to lease would certainly be valid in Texas. See Problems Presented by the Separation of The Exclusive Leasing Power from the Ownership of Land, Minerals or Royalties by Lee Jones, Jr., Institute on Oil and Gas Law, pp. 271, et seq. The Alabama statutes relating to powers, Code of Alabama, 1940, Tit. 47, §§ 75–93, and the cases construing those statutes have not been discussed by the parties. We find nothing in the Alabama statutes or decisions which would make the result in Alabama different from that in Texas, and conclude that Wright's reserved power to lease is in all respects valid.

The judgment on what we have called the first issue is reversed and the cause remanded in order that there may be a trial on the merits on that issue, and in all other respects the judgment is affirmed. The costs of appeal are taxed against Mrs. Kilfoyle.

Reversed and remanded in part; affirmed in part.