BOSTICK OIL COMPANY, INC., Plaintiff,

v.

MICHELIN TIRE CORPORATION, COMMERCIAL DIVISION, Defendant.

Civ. A. No. 78–837.

United States District Court, D. South Carolina, Columbia Division.

Oct. 23, 1979.

Michael H. Quinn and Robert E. Staton of Quinn & Smith, Columbia, S. C., for plaintiff.

Wesley M. Walker and R. Frank Plaxco, Jr., of Leatherwood, Walker, Todd & Mann, Greenville, S. C., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM

HEMPHILL, District Judge.

This matter is before the court on plaintiff's motion for summary judgment as to

defendant's counterclaim for abuse of process. Plaintiff filed this action under 28 U.S.C. § 1337 [1] and under 28 U.S.C. § 1332 [2] alleging certain antitrust violations and common law wrongs. Defendant then counterclaimed on grounds that the original action was brought for the ulterior purpose of forcing defendant to continue in a business relation with plaintiff which had lapsed and had not been renewed, and to delay for a period of years the payment of monies due on the lapsed contract. The parties have briefed this court on the motion for summary judgment as to the abuse of process counterclaim, and have filed transcripts of the hearings for a temporary restraining order and temporary injunction. The court having reviewed these materials and the applicable cases, is of the opinion that material issues of fact remain in dispute which require this court to deny plaintiff's motion.

This court has recognized that a cause of action for abuse of process exists in South Carolina. *Ransome v. Mimms*, 320 F.Supp. 1110 (D.S.C.1971). The essential elements of abuse of process are:

[F]irst, an ulterior purpose and second, a willful act in the use of the process not proper in the regular conduct in the proceeding. Some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment

1. The jurisdictional basis for antitrust actions is § 1337 of Title 28 which reads:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

2. 28 U.S.C. § 1332 reads in pertinent part: Diversity of citizenship;

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and is between—

(1) citizens of different States; . . . .

of money, by the use of process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself which constitutes the tort. *Huggins v. Winn Dixie Greenville*, 249 S.C. 206, 153 S.E.2d 693 (1967), quoting *Prosser*, Handbook of the Law of Torts, 2d edition, pp. 668–669. The mere commencement of an action by the service of a Summons as required by law cannot amount to abuse of process. *Bell Lines, Inc. v. Strickland*, 254 S.C. 148, 173 S.E.2d 788 (1970).

Defendant's counterclaim asserts in paragraph 6:

The act of the plaintiff in instituting this legal action, and its failure to pay its debt owing to the defendant when instituting this legal action, and its failure to pay the costs and expenses incurred by the defendant in collecting the debt manifests a malicious abuse of legal process to accomplish improper results, that is, to coerce and compel the defendant to continue to deal with the plaintiff irrespective of contractual rights, and to avoid the payment of legitimate debts, costs and expenses.

The events which gave rise to this claim occurred in two hearings before this court, one in a hearing to continue a temporary restraining order, and the other being a hearing to dissolve the TRO. The background facts are undisputed, only their meaning is in question. For a number of years the parties entered into an annual contract which provided that it would expire after one year. The first contract, called a Dealer Sales Agreement, was entered into in May 1974, and a renewal of that contract, requiring separate documents, was entered into each year up until May 1978. Each of these contracts provided that it would terminate, unless renewed, after one year. Over the years plaintiff had developed a substantial credit line with defendant and in May 1978 plaintiff owed defendant several hundreds of thousands of dollars for purchases of tires from defendant. In May, 1978, defendant declined to renew plaintiff's agreement relating to the sale of truck tires, but expressed an initial willingness to enter into an agreement so that plaintiff could continue selling passenger tires. At this point, plaintiff filed the instant lawsuit.

At the time the action was instituted, a motion, in proper form with supporting affidavit, was made for a temporary restraining order which was subsequently issued by this court on May 26, 1978. The TRO restrained defendant from terminating the Dealer Sales Agreement until a hearing on plaintiff's motion for a preliminary injunction. Bond was set at $1,000 because this court was unsure of the potential damages to defendant but felt that defendant could not suffer substantial damages in the 10 days before a hearing on the preliminary injunction.

At the June 1st hearing on the preliminary injunction this court directed plaintiff to continue making payments on its account to defendant, and instructed plaintiff to pay cash on delivery for tires received after that date. In addition the cash bond was increased. These modifications permitted defendant ample time within which to prepare its response to the action while the court refrained from creating a new contract for the parties who were no longer bound under the expired agreement. The modifications were granted over plaintiff's objection. This court issued its Order on June 2, 1978 continuing the Restraining Order as modified.

On June 2, 1978, plaintiff filed its motion to dissolve the Restraining Order based on plaintiff's inability to continue transacting business with defendant under the terms of the modifications contained in the June 2, 1978 Order. On June 14 this court dissolved the Restraining Order as to the COD payments for tires (with certain minor exceptions) but continued the provisions regarding payment on the line of credit extended by defendant to plaintiff.

The theory behind defendant's counterclaim is that these hearings were used by plaintiff in an attempt to force defendant to continue in business with plaintiff on plaintiff's terms while allowing plaintiff the

interest on and use of, the $500,000 line of credit until this lawsuit is concluded. Defendant contends that under Rule 13(a)[3] it must counterclaim for the $500,000 in extended credit or forfeit its right to sue, which allows plaintiff to take the position that payment of the $500,000 should be delayed until a set-off can be computed against plaintiff's recovery on its antitrust and associated claims. Meanwhile defendant says plaintiff could reap the benefits of interest from usage of this money for the 2–3 years it might take to complete this lawsuit. This prospect constitutes in defendant's eyes a threat or coercion to be used in forcing settlement of the case.

Plaintiff asserts that it has used the legal process in a normal manner at all times. It notes that the TRO continuing the terms of the contract then in effect on May 26, 1978, is authorized under 15 U.S.C. § 26[4] which permits injunctive relief for certain violations of the antitrust laws. Further, although the Restraining Order was instituted and later partially dissolved at plaintiff's request, plaintiff claims nothing was improper about this change in position due to an inability to survive financially under the terms of the modified TRO which contained the COD provision requested by defendant, not plaintiff.

■ In South Carolina, "The evil aimed at in the cause of action is the use of the process to gain a collateral advantage not contemplated by the process. The process must be used to coerce or extort some object not within its scope." 320 F.Supp. at 1114. This court is unable to determine the validity of defendant's argument that it was improper to attempt to tie defendant into the pre May 28th contract for the duration of the suit. It may be that plaintiff is entitled to an order requiring defendant to honor the lapsed contract, since the courts occasionally enforce contracts where termination would subject plaintiff to a course of conduct by defendant which is illegal under the antitrust laws of this country. Whether plaintiff's complaint states a valid cause of action entitling it to injunctive relief has not been argued to this court since the preliminary injunction hearing under *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977), did not delve into the merits of plaintiff's claim.

■ However, there do appear to be material disputes of interpretation as to whether plaintiff's actions were designed to gain interest-free usage of the $500,000 line of credit until resolution of this lawsuit. If such were the case, this would clearly be using legal process to gain a collateral advantage not contemplated by the process. The reasons why plaintiff may have instituted this suit are largely questions of intent. It is said that summary judgment should not usually be given on issues of intent because, obviously, that is subject to differing interpretations. *Pepp v. Superior*

---

**3.** Fed.R.Civ.P. 13(a) reads: Counterclaim and Cross-Claim

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

**4.** 15 U.S.C. § 26 states in pertinent part: Injunctive relief for private parties; exception

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: . . . . .

*Pontiac GMC, Inc.*, 412 F.Supp. 1053 (E.D. La.1976).

At a trial on the merits, all, several, or none of plaintiff's or defendant's allegations may be established or fail for lack of proof, but those allegations should not be subject to a summary disposition at a time when the burden of proof on plaintiff's motion is much heavier than the burden on defendant's counterclaim would be at a trial on the merits. *Kilfoyle v. Wright*, 300 F.2d 626 (5th Cir. 1962). Furthermore, the record is too incomplete to furnish a basis for concluding that there is no factual controversy as to plaintiff's intent. *United States v. Mullins*, 344 F.2d 128 (4th Cir. 1965). Presumably defendant will seek to establish support for its claims from depositions, interrogatories and requests for admissions. Given the lack of agreement on the facts, summary judgment is inappropriate at this time.

Plaintiff correctly reminds this court that a finding was made at the initial hearing that no amount was past due, and that plaintiff has adhered to the payment schedule set up for payment of the credit line of $500,000, more or less. However, defendant questions the motivation of plaintiff in bringing the suit, and claiming that payment of the $500,000 was not ripe for decision since the issue was not before the court. Defendant sees in this a possible attempt to hold up payment on the debt until the end of the lawsuit since defendant would be required to counterclaim for the debt. Although the debt has been paid on schedule, it took several hearings before the question of payment was resolved. Thus, the later payment does not answer the question of plaintiff's motivation in bringing the suit and whether plaintiff made an attempt at gaining a collateral advantage through an injunction and compulsory counterclaim, before eventually abandoning that tactic.

In conclusion, it appears that several material issues of fact concerning defendant's counterclaim have not been resolved. Without stating a belief that defendant will prove its counterclaim at trial, defendant is certainly entitled to its day in court. Accordingly, plaintiff's motion for summary judgment as to defendant's counterclaim is denied.

AND IT IS SO ORDERED.