519 So.2d 948 (1988)
DAUPHIN ISLAND PROPERTY OWNERS ASSOCIATION
v.
CALLON INSTITUTIONAL ROYALTY INVESTORS I, etc., et al.
85-1074.
Supreme Court of Alabama.
January 22, 1988.
Barry Hess of Hess, Atchison & Horne, Mobile, for appellants.
Conrad P. Armbrecht II, Douglas L. Brown, and David E. Hudgens of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellees.
ALMON, Justice.
The issue in this case is whether a perpetual, nonparticipating royalty interest in minerals violates the rule against perpetuities. The Dauphin Island Property Owners Association ("the Association") filed this action, requesting the court to declare that a 1981 royalty deed from the Association to Dan Dumont was void and to quiet title to the subject property in the Association. The complaint named as defendants Dumont and Callon Institutional Royalty Investors I, a Mississippi limited partnership ("Callon"). Other defendants were later added, but they, along with Callon, hold only as successors in interest to Dumont, so the issues as to the Association's royalty deed control the case.
*949 The trial court granted summary judgment for the defendants, holding that the Association's royalty deed "is valid and effective in accordance with its terms and provisions, and [that] the interest conveyed thereby does not violate the rule against perpetuities."
The Association sold to Dumont "a royalty interest free of the costs of production, which is equal to ... 1/8th of the whole of any oil, gas, ... or any other minerals ... produced from an undivided 234/350 interest in the minerals in, on and under" the described property. The provisions of the deed now alleged to violate the rule against perpetuities are contained in the following paragraphs:
"This sale and transfer is made and accepted subject to that certain Oil, Gas and Other Minerals Lease from [the Association] to Shell Oil Company, dated February 14, 1980, but the royalties hereinabove described shall be delivered and/or paid to [Dumont], his heirs and assigns, out of and deducted from the royalties reserved to Lessor in said lease. This sale and transfer, however, is not limited to royalties accruing under said lease presently affecting said lands, but the rights herein granted are and shall remain a charge and burden on the interest in minerals herein described and binding on any future owners or lessors of the same, and, in the event of the termination of any present lease, the said royalties shall be delivered and/or paid out of the whole of any oil, gas or other minerals produced from said interest in minerals by the owner, lessee or anyone else operating thereon.
"The [Association] herein reserves the right to grant future leases affecting said interest in minerals so long as there shall be included therein, for the benefit of [Dumont] the royalty rights herein conveyed; and the [Association] further reserves the right to collect and retain all bonuses and rentals paid for or in connection with any future lease or accruing under the lease now outstanding."
The rule against perpetuities provides that no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest. Earle v. International Paper Co., 429 So.2d 989 (Ala.1983); Code 1975, § 35-4-4. The Association's contention is that the interest conveyed by its royalty deed does not vest within the period of the rule because it "is contingent both upon the production of oil, gas or other minerals on the lands and upon the execution of future leases[1] covering said land, neither of which is required to occur within the time limit."
This argument derives from two Kansas cases: Lathrop v. Eyestone, 170 Kan. 419, 227 P.2d 136 (1951), and Cosgrove v. Young, 230 Kan. 705, 642 P.2d 75 (1982). Lathrop held two conveyances of royalty interests void due to the rule against perpetuities. In Cosgrove, relying upon that decision in Lathrop, the court stated:
"We conclude that the trial court correctly held that the instrument was in violation of the rule against perpetuities and, hence, null and void. We are not unmindful that some other jurisdictions might well reach a different result in applying their case law to the issue herein. However, the parties hereto seek no alteration of our existing case law and we see no compelling reason for change."
230 Kan. 715, 642 P.2d at 84.
The dissent in Cosgrove, however, pointed out that the Lathrop decision has been uniformly criticized and seldom, if ever, followed outside of Kansas. The most telling criticism in that dissent is in a quotation at 230 Kan. 724, 642 P.2d 89 from 2 Williams & Myers, Oil & Gas Law § 324.4, pp. 59-60:
"To hold perpetual royalty to be too remote is to confuse the value of the right with the right itself. From the time the executive delivers or accepts the deed, he is bound to account to the non-executive for a fraction of the oil; the duty may not be onerous for there may never be *950 any, oil; but the lack of production does not remove the duty."
The defendants make the same point when they argue that their royalty is vested in interest, though not vested in possession. They cite Hanson v. Ware, 224 Ark. 430, 274 S.W.2d 359 (1955), as the leading case establishing that a perpetual, non-participating royalty interest does not violate the rule against perpetuities. That entire case is well reasoned and worth reading, and we quote a pertinent passage:
"The appellees' estate was doubtless speculative in value, but the uncertainty stemmed from a fundamentally different reason from that which makes an ordinary contingent remainder an estate of doubtful worth.... The appellees' title being complete, the doubt is occasioned not by the possibility that some one else may acquire the property but by the possibility that there may in fact be no oil and gas within the land. In short, the typical contingent remainderman has an uncertain interest in the fee simple, while these appellees have a fee simple interest in the uncertain.
"A contingent future interest is one which may eventually become vested, but here the difficulty lies in the attempt to find a satisfactory date upon which the appellees' estate, if regarded as future and contingent, might be said to vest. The appellant suggests that the estate would vest upon the execution of an oil and gas lease, but this position is not theoretically sound. Suppose, for example, that a lease were executed and expired by its terms without production; would the estate then again become contingent, awaiting a second vesting upon the making of another lease? A vested estate is by definition vested for all time; the concept itself precludes the possibility of a further contingency.
"It might also be argued that the estate would vest upon the actual production of oil and gasthe view to which the Kansas court was driven by reason of the royalty interest being considered as personal property. But in Arkansas the royalty interest is real property, and the severed oil or gas is personalty; there is no need to confuse the two. A particular producing well might be abandoned at any time, and even if operated to exhaustion it would drain only the oil-bearing stratum that it had penetrated, leaving untouched other deposits that might lie above or below. It is hard for us to conceive of an estate in real property which vests barrel by barrel or stratum by stratum. In the analogous case of a profit a prendre, such as the perpetual right to take game or fish from another's land, the estate in real property is a present vested interest which is unaffected by the rule against perpetuities. Gray, The Rule Against Perpetuities (4th Ed.), § 279. Although the owner of such a privilege acquires a personal property interest whenever he bags a duck or lands a fish, this action is merely an incident in the enjoyment of the estate in real property."
224 Ark. at 436-37, 274 S.W.2d at 362-63.
The parties argue over the question of whether a royalty interest in Alabama is an interest in realty or in personalty, citing Nelson v. Teal, 293 Ala. 173, 301 So.2d 51 (1974); Locke v. Locke, 291 Ala. 344, 280 So.2d 773 (1973); McCall v. Nettles, 251 Ala. 349, 37 So.2d 635 (1948); and Kilfoyle v. Wright, 300 F.2d 626 (5th Cir.1962). Clearly a "mineral interest" is real property, see Nelson and Locke, and the defendants argue that a royalty interest is an "interest in minerals" and is also real property.
In Kilfoyle v. Wright, 188 F.Supp. 899, 904 (S.D.Ala.1960), the district court held that "if the plaintiff acquired a non-participating royalty interest under the deed, she did not acquire any right or title to the mineral interest in the property." This holding was in the context of whether a lease executed by the defendant was valid, as against plaintiff's contention that she held exclusive leasing rights. The circuit court, in affirming, dismissed the plaintiff's perpetuities argument:
"Mrs. Kilfoyle further insists that the exclusive leasing power retained by Wright is invalid because it is a power not coupled with an interest....

*951 Wright's power to lease is ... coupled with ownership of the surface and substantial rights in the minerals. Such an exclusive power to lease would certainly be valid in Texas.... We find nothing in the Alabama statutes or decisions which would make the result in Alabama different from that in Texas, and conclude that Wright's reserved power to lease is in all respects valid."
Kilfoyle v. Wright, 300 F.2d 626, 631 (5th Cir.1962). Clearly the interest granted to the defendants here is not subject to attack as a power without an interest. It is the Association that holds the power analogous to that attacked in Kilfoyle.
The Association relies on the Kilfoyle appellate decision, however, for the proposition that the royalty interest herein is personalty and thus violates the rule against perpetuities under the Kansas rule. This argument stems from the following language in the appellate opinion:
"The [Kilfoyle deed's] language is too clear to admit of doubt that the royalty interest rather than ownership of the minerals themselves as imbedded in the ground was the interest intended to be conveyed by the deed....
"It is true that the Supreme Court of Alabama in McCall v. Nettles, 1948, 251 Ala. 349, 37 So.2d 635, held that a reservation of fifty per cent of all rentals and royalties derived from oil, gas and mineral leases should be construed as reserving an interest in the minerals in the ground. The present deed does not in terms grant rentals, but royalties only, and its provisions are otherwise much more explicit than those in McCall v. Nettles, supra."
300 F.2d at 630 (emphasis in original).
It should be noted that this holding was reached in the face of Mrs. Kilfoyle's argument that she owned the minerals and therefore the right to lease the extraction rights. Thus, the holdings that the royalty interest was not "ownership in the minerals themselves"[2] and that McCall was distinguishable were reached in a different context. We note further that the argument by defendants in this case, that there is a distinction between "the mineral interest," i.e., fee ownership of the minerals themselves, and "an interest in the minerals," i.e., some beneficial interest, such as a royalty, deriving from the minerals, is perfectly consonant with the reasoning in Kilfoyle. That is, Mrs. Kilfoyle did not hold the mineral interest, but her royalty was an interest in the minerals that did not include the executive leasing right.
Defendants derive from this a distinction from the Kansas rule of Lathrop and Cosgrove. In short, they say that because they now own an interest in the minerals they are not subject to the interpretation that royalty interests are personal property that vests only upon extraction of the minerals.
We do not think it sound to view a royalty interest in minerals as personal property simply because the profits therefrom may be realized only when the minerals are extracted, but we do not find it necessary to hold that royalty interests are real property for all purposes. Instead, we deem it sufficient to disapprove the Lathrop rule and hold that, whether a non-participating royalty interest be construed as an interest in the minerals or as a personal property right in the minerals once they are extracted, it does not violate the rule against perpetuities, because it is a vested interest even though uncertain in the enjoyment. "The applicable rule of construction is that, if futurity is annexed to the substance of the gift, it is contingent, but if annexed to the time of payment, enjoyment, or delivery of possession, it is vested." Zimmerman v. First Nat. Bank of Birmingham, 348 So.2d 1359, 1365 (Ala.1977) (citations omitted; emphasis in original). The contingencies attendant upon the value and alienability of a non-participating royalty (i.e., whether there is oil under this land and *952 whether it will ever be extracted[3] are exactly the same as those attendant upon the value and alienability of the full mineral fee once that is severed from the surface rights. Thus, to hold the royalty interests void would compel a holding that severance of the mineral interest also violates the rule against perpetuities because it is uncertain whether anyone will ever obtain minerals. Such a result would comply neither with accepted practices nor with the purposes of the rule against perpetuities.
The District Court of Appeal of Florida, Fifth District, has recently reached the same result as we do herein:
"Florida recognizes the concept that the rule against perpetuities is directed to remote contingent estates, and is not concerned with estates which vest within the rule, even if the time is remote when the estate comes into possession....
"The appellees urge us to follow the Kansas rule that a royalty interest is personal property which does not vest until the oil is severed from the ground, so that an attempt to create a perpetual nonparticipating interest violates the rule against perpetuities.... We cannot accept that position for several reasons. First, the Florida case of Miller v. Carr, [137 Fla. 114, 188 So. 103 (1939) ], forecloses it. Next, the Kansas rule, which is distinctly a minority view in the country, has been severely criticized by members of the Kansas Supreme Court [quoting the dissent in Cosgrove]."
Terry v. Conway Land, Inc., 508 So.2d 401, 405 (Fla.Dist.Ct.App.1987). See Annot., 46 A.L.R.2d 1268 (1956).
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX and BEATTY, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
What is the reason for the "rule against perpetuities"? It is to make certain that property is not removed from the stream of commerce for an unacceptable period of time.
Dauphin Island Property Owners Association's 1981 royalty deed to Dan Dumont conveyed an interest that could be ascertained at the time it was conveyed and at all times thereafter. A corporation or a person can acquire fee simple title to land, but elect not to mortgage it, or sell it until after some life or lives in being plus 21 years. At all times this land is available for commerce. So, too, is the interest conveyed to Dumont. It has at all times been available for commerce; therefore, it does not violate the rule against perpetuities.
NOTES
[1] The deed is expressly not contingent upon future leases.
[2] Although the circuit court did not indicate that the royalty interest was personal property, the district court did say that by it Mrs. Kilfoyle "did not acquire any right or title to the mineral interest in the property."
[3] There is also the contingency with respect to a nonparticipating royalty that the executive owner will never develop or lease the mineral interests, but this objection can be answered by the fact that the executive has a fiduciary duty to the non-executive and, presumably, could in the proper case be compelled to develop, lease, or otherwise account for his treatment of the mineral interest. See Burnett v. Perkins, [Ms. 86-230, January 22, 1988] (Ala.1988).