**COMMERCE BANK OF KANSAS CITY, N.A., Personal Representative, Respondent,**

v.

**PEABODY COAL COMPANY and Peabody Development Company, Appellants.**

**No. WD 46657.**

Missouri Court of Appeals, Western District.

June 29, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1993.

Application to Transfer Denied Oct. 26, 1993.

W. Stanley Walch and Mike W. Bartolacci, St. Louis, Spencer J. Brown, Kansas City, for appellants.

George Allen Barton and Scott K. Martinsen, Kansas City, for respondent.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

SHANGLER, Judge.

Commerce Bank of Kansas City, N.A, as personal representative for the Estate of Gladys Kelce, brought suit against Peabody Coal Company and Peabody Development Company for underpayment under a December 7, 1946 royalty agreement, fraud and punitive damages. In their responsive pleading, Peabody denied liability and asserted numerous counterclaims. The trial court sustained the Commerce Bank motion to dismiss Peabody counterclaims I, II, III and V for failure to state claims upon which relief can be granted. These decisions, as the court acknowledged, were influenced by the order of U.S. District Court for the Western District of Kentucky in a parallel suit involving the same royalty agreement wherein Peabody brought identical counterclaims.[1]

Peabody moved for the entry of final judgment on the dismissal of the counterclaims, on the ground that "the validity or invalidity of the 1946 conveyance under the Rule Against Perpetuities is a case-dispositive issue that presents a pure question of law that is ripe for immediate appellate review." The circuit court granted the Peabody motion, amended the prior order dismissing Counts I, II, III and V of the counterclaims with prejudice and certified its order as final under Rule 74.01(b). Peabody appeals from "the dismissal of its counterclaims alleging that the Agreement is void under Kentucky's rule against perpetuities." That is to say, Peabody appeals from the dismissal of Counts I, II and III of the counterclaims.

### The Facts

On December 7, 1946, L. Russell Kelce and others [the Jackson Development Partners]

---

1. *Willits, et al. v. Peabody Coal Co., et al.,* 1993     WL 35249 (W.D.Ky.1991).

conveyed certain lands to Sentry Coal Mining Company. As part of the consideration for the conveyance, Sentry entered into the 1946 royalty agreement with the Partners whereby Sentry agreed to pay the Partners an overriding royalty of five percent on all coal mined and sold by Sentry and its successors or assigns from lands lying in Ohio County, Kentucky within a defined boundary the royalty area. Sentry at the time of the conveyance did not own most of the property in the boundary, the area in which the royalty interest was conveyed.[2] At various times after the conveyance, Sentry or its successor in interest, Peabody, acquired various fee or leasehold interests in the royalty area that were not owned by Sentry on the date of the conveyance. These after acquired properties were never owned by Kelce or the other co-grantees [the Partners] of the 1946 conveyance.

Peabody assumed the Sentry obligations under the 1946 royalty agreement as early as 1956. Peabody has mined and sold coal from the royalty area and paid royalties to either Gladys Kelce or Commerce every year for the last twenty-five years. Peabody paid these royalties regardless of whether the coal was mined from lands owned or leased by Sentry in 1946 or from lands thereafter acquired or leased.

A portion of L. Russell Kelce's royalty rights were later transferred to Gladys Kelce, his wife. Her rights to receive royalties passed to her estate upon her death in 1985. Commerce Bank is the personal representative of the estate of Gladys Kelce.

### The Issues

The petition of plaintiff Commerce Bank alleged claims that Peabody breached the 1946 royalty agreement by failing to pay royalties on coal mined and sold from the royalty area by its assignee, Pyramid Mining, Inc.; that Peabody breached the agreement by failing to pay royalties on the total gross realization of the coal; that Peabody fraudulently concealed and misrepresented the mining done and receipt of royalties from Pyramid and fraudulently concealed that Peabody was underpaying the royalties; and Peabody fraudulently induced Commerce to agree to a reduction in the royalty rate payable under the 1946 royalty agreement.

Peabody moved to dismiss all counts of the Commerce petition or in the alternative for summary judgment. The alternative motions were denied.

The responsive pleading of Peabody asserted numerous counterclaims against Commerce. Three of the counterclaims were based on the theory that the 1946 royalty agreement violates Kentucky's common law rule against perpetuities to the extent that royalties are to be paid on coal mined and sold from land acquired or leased by Peabody [or predecessor Sentry Coal] after December 7, 1946. Count I of the counterclaims was for money had and received by Commerce under a royalty agreement rendered invalid by the rule against perpetuities. Count II of the counterclaims was on the theory that the royalties from the after acquired properties were paid under a mistake of fact as to Gladys Kelce's contractual rights to the payments. Count III was on the theory of quasi-contract to recover money paid to Gladys Kelce to prevent an unjust enrichment and as a setoff against any amounts recovered by Commerce. Count V was a claim for civil conspiracy against Commerce on allegations that Commerce's predecessors in interest, Kelce and the Partners planned and schemed to fraudulently misappropriate Peabody funds in the form of excess royalty payments not lawfully due them.

The circuit court sustained the Commerce motion to dismiss counts I, II, III and V of the counterclaims. Peabody appeals the dismissal of Counts I, II and III.

### The Appeal

■ The appeal presents an issue of law: whether the grant of an overriding royalty interest in property in Kentucky not owned by the grantor at the time of the conveyance violates the state's common law rule against

---

**2.** The boundary, or royalty area, comprised approximately 28,700 acres. On the date of the conveyance in 1946, Sentry owned the fee or leasehold interest in 9,000 acres within the boundary.

perpetuities. A court of review owes no deference to the conclusions of law that sustain a trial judgment. It is, rather, a matter for independent adjudication.

The first point asserts that the dismissal of the three counts of the counterclaims was erroneous because the 1946 conveyance was void under the Kentucky common law rule against perpetuities in that the royalty interest created was a property interest that was not certain to vest within 21 years of lives in being at the time of the conveyance.

Kentucky law, K.R.S. § 381.215 (1960), provides:

> No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest. It is the purpose of this section to enact the common-law rule against perpetuities, except as hereinafter modified by K.R.S. 381.215 to 381.223.[3]

Peabody argues that the statute "clearly voids" the royalty interest that Commerce claims under the agreement because "it is an interest in real or personal property" and it is not certain to vest within "twenty-one years after some life in being at the creation of the interest."

The royalty interest under the 1946 agreement constitutes "an interest in real or personal property" within K.R.S. § 381.215, Peabody argues, because that conveyance purports to convey to the grantees an "overriding royalty" interest in all coal reserves within the royalty area which is owned by Sentry or its successors and assigns.[4] Kentucky law, the argument explains, classifies accrued royalties on coal already severed as

personal property and unaccrued royalties to be paid in the future on coal that has not been severed as real property. *See Kentucky Bank & Trust Co. v. Ashland Oil & Transp. Co.,* 310 S.W.2d 287 (Ky.1958); *Hall v. Fuller,* 352 S.W.2d 559 (Ky.1961). The argument cites *Mounts v. Roberts,* 388 S.W.2d 117 (Ky.1965), a decision of the highest court of the state, that a conveyance that undertook to convey a right to be paid royalties on coal mined from a designated area created a real property interest that was subject to the rule against perpetuities.

Accordingly, the argument concludes, as a legal proposition, the determination of the circuit court in the case under review that the 1946 conveyance "did not create any interest in land"—a property interest subject to the rule is erroneous as a matter of law.[5] It is noted that the Kentucky rule against perpetuities expressed in K.R.S. § 381.215 applies to both personal and real property interests.

Peabody argues that not only does the unaccrued royalty interest conveyed to the grantees by the 1946 agreement constitute an interest in property within § 381.215, but it is an interest contingent and not certain to vest "not later than twenty-one years after some life in being at the creation of the interest." *Id.* This is because Sentry did not own the "after-acquired properties" in the royalty area at the time the conveyance was executed, and so the grantees did not then have a royalty interest in the coal located in those properties. Rather, under the terms of the conveyance the royalty interest arises if, and only when, Sentry or its successors acquire the property. The argument

---

**3.** Enacted in 1960 as well was § 381.216, the "wait and see" standard, which measures the period of perpetuities by actual rather than by possible events. *Id.* The changes enacted in 1960 apply only to instruments and wills taking effect after 1960, and so do not apply to the 1946 conveyance in issue on appeal.

**4.** The argument explains: "An 'overriding royalty' is a royalty interest in minerals located on property that the royalty holder (*i.e.,* the grantee) does not actually own. An 'overriding royalty' is therefore distinguished from a conventional 'royalty' interest, which is retained by the owner of the fee, typically in a situation in which the mineral estate is leased to a lessee who plans to

sever the minerals and pay the lessor compensation in the form of royalties. *See generally,* 4 ROCKY MOUNTAIN MINERAL LAW FOUNDATION, AMERICAN LAW OF MINING § 132.-04[1] at 132–30–31 (1992)."

**5.** The full statement of the legal proposition announced by the court reads: "4. that the Royalty Agreement did not create any interest in land, and did not restrict the alienability of real property interest." The significance of that holding, as becomes evident, is understood in the integral rationale of the legal premises that undergird the judgment.

continues: "The requirement that Sentry or [its successor] Peabody actually acquire property before Commerce Bank will have a valid royalty interest is the essence of a contingent estate." In the absence of that contingency, no interest would vest. The argument resumes: "Since the interest was contingent, the Conveyance must specify that the interest is certain to vest within 'twenty-one years after some life in being' in 1946 for it to be valid. K.R.S. § 318.215."

■ Peabody concludes that the 1946 agreement contains no time limit as to when Sentry or a successor must acquire the property to which the royalty interest would attach, therefore, "[t]he Conveyance, on its face, violates this requirement." It is an interest not certain to vest within the statutory period, and therefore is an interest rendered void *ab initio* by § 318.215 under *Mounts v. Roberts*, 388 S.W.2d 117 (Ky. 1965).[6]

Peabody acknowledges nevertheless that "the precise issue of the applicability of the rule to overriding royalty interest" has not been ruled upon by the Kentucky courts, but argues that Kentucky case law discussing "analogous pre–1960 property interests confirms that the interest is void *ab initio* despite the fact that the claim has not been raised until recently."

The claim was in fact raised in an earlier litigation by Peabody in a suit brought in the U.S. District Court for the Western District of Kentucky [*see* fn. 1] by others with rights to receive royalties from Peabody under the 1946 royalty agreement. Those claims against Peabody were similar to those that Commerce asserts in this litigation. Peabody brought counterclaims against those plaintiffs which are identical to those asserted against Commerce Bank in this case.

Those counterclaims, as are these, were based upon the theory that the 1946 royalty agreement violates the common law rule against perpetuities to the extent that royalties are to be paid on coal mined and sold

from land acquired or leased by Peabody or Sentry after the date of the royalty agreement. The plaintiffs in the Kentucky action, as did the plaintiffs here, moved to dismiss the several counterclaims on the ground that the 1946 royalty agreement does not violate the Kentucky rule against perpetuities. The federal court determined that the 1946 royalty agreement does not contravene the Kentucky rule against perpetuities because the agreement creates no interest in the land and therefore is not subject to the rule, and the rule against perpetuities has no effect on the duration of such a contract.

The formal Memorandum Opinion and Order ruled [slip op. at 19, 20]:

In the present case, the agreements in question create no interest whatsoever in land, or in the coal leases themselves, that would restrict the alienability thereof. All the Royalty Agreements do [the 1946 royalty agreement among the others] is create obligations personal to the parties to those agreements. Peabody, which by virtue of its acquisition of Alston and Sentry became bound by the Royalty Agreements, has the rights to mine the coal. If Peabody elects to exercise that right, then Peabody owes a contractual obligation to pay royalties to the plaintiffs. Peabody is free to assign to some other entity its rights to mine the coal, but nothing in the Royalty Agreement makes that assignee liable for the payment of royalties. The alienability of the mining rights is thus not restrained by any interest that could vest at some remote time. To the contrary, under the plain language of the Royalty Agreements, a purchaser of those rights would take free of any obligations to pay royalties. Even if Peabody assigns its rights to mine to others, Peabody remains obligated to pay royalties.

If the Royalty Agreements purported to create a duty to pay royalties in whoever mined the coal, so that the property interest creating the right to mine (*i.e.,* a coal

---

**6.** The argument makes clear that only instruments that were executed after 1960 are subject to the Kentucky "wait-and-see" standard to determine vesting. *See* K.R.S. § 381.223. Those interests created by pre–1960 instruments, such

as the 1946 conveyance, continue to be governed by the common law Rule Against Perpetuities. *See Kentucky–West Virginia Gas Co. v. Martin*, 744 S.W.2d 745, 747 (Ky.App.1987).

lease) carried with it a royalty obligation payable by the miner, that royalty interest might be considered an interest in property subject to the Rule Against Perpetuities. The alienability of the coal leases could be restricted by such an interest, because whoever got the leases would also acquire a royalty obligation. If that property right vested at some remote period beyond twenty-one years after a life in being, then the Rule Against Perpetuities might be in issue. But that issue is not presented by the Royalty Agreements here. They simply represent contractual obligations created by Peabody's predecessor corporations, and for which Peabody has become liable, by virtue of the acquisition by Peabody of Alston and Sentry. The Royalty Agreements therefore are not subject to and do not violate the Rule Against Perpetuities, whether they cover "after-acquired" property or not.

The court adjudged that to the extent the counts of Peabody's counterclaim depended on the invalidity of the royalty agreements under the rule against perpetuities, they failed to state a claim upon which relief can be granted and entered judgment accordingly.

The judgment of the circuit court, in the dismissal of Counts I, II, III and V of the Peabody counterclaim against Commerce and of the concomitant rejection of the applicability of the Kentucky common law rule against perpetuities to the issues in suit, expressly adopted the essential rationale of the federal court adjudication. The circuit court determined, consonant with the federal court determinations, that the royalty agreement created enforceable rights and obligations personal to the parties to the agreement, and not an interest in land, did not restrict the alienability of a real property interest, and so was not subject to the rule against perpetuities.

Peabody argues that the effect of the rule against perpetuities is not avoided because the conveyance that creates the property interest is called a *contract* rather than a *deed.* Kentucky law acknowledges and adopts the

statement of principle, nevertheless, that " 'The rule against perpetuity concerns rights of property only, and does not affect the making of contracts which do not create rights of property.' " *First Nat'l Bank & Trust Co. of Lexington v. Purcell,* 244 S.W.2d 458, 461[4, 5] (Ky.App.1951). The federal opinion presumably cites to *Purcell* for its recitation that a contract, such as the Peabody contract, "which creates no interest in the property is not subject to the Rule Against Perpetuities, and the rule has no effect on the duration of such a contract." *Willits,* slip op. at 19. Peabody argues insistently, nevertheless, that the rationale of the federal opinion notwithstanding, the law of Kentucky treats a royalty interest as a property interest, and a royalty interest in coal that has not yet been mined a perpetual unaccrued royalty interest[7] stands no differently.

Indeed, it is the law of Kentucky, that the "[t]he right to *unaccrued* royalties (generally regarded as in effect a reservation of the share of oil in place) retained by or vested in the owner of the land is of the nature of an incorporeal hereditament. It is real property or an interest or estate which passes to the purchaser of the land." *Kentucky Bank & Trust Co. v. Ashland Oil & Transp. Co.,* 310 S.W.2d at 290[5]. The question before the trial court, and now before us, for decision, however, is not whether an interest in unaccrued royalties is an interest in property within the rule against perpetuities, but whether a royalty interest in minerals created prior to the making of the mineral lease is subject to the rule. It is a question, as the parties acknowledge, not yet authoritatively decided by a Kentucky court.

The Supreme Court of Oklahoma in *Denney v. Teel,* 688 P.2d 803 (Okla.1984), in the course of opinion on another aspect of the Kentucky law of perpetuities, commented on the question whether "a non-participating royalty interest is even subject to the rule against perpetuities." *Id.* at 809. *Teel* reasoned from analogy of principle to the conclusion that the non-participating royalty is

---

7. "A royalty interest created by grant or reservation prior to lease is commonly referred to as a perpetual nonparticipating royalty." *Gallin v. Combs,* 341 S.W.2d 778, 781[1–3] (Ky.1960).

an incorporeal hereditament, an interest that immediately vests when conveyed, and therefore not subject to the rule against perpetuities. That a non-participating royalty interest, as a right to unaccrued royalties, is real property in the nature of an incorporeal hereditament, and hence an interest that vests immediately, rests soundly on *Kentucky Bank & Trust Co. v. Ashland Oil & Transp. Co.*, 310 S.W.2d at 290[5]. *Teel* noted that "[s]ince royalty is inherently subject to another's power to lease," it would not in principle be subject to the rule against perpetuities. *Teel*, 688 P.2d at 809[15–18]. Nor, since in principle a perpetual nonparticipating royalty interest is a presently vested incorporeal hereditament, should payment contingent on the execution of leases offend the Kentucky rule against perpetuities. *Id.*

The question of whether a perpetual non-participating royalty interest violates the rule against perpetuities, has been posed in jurisdictions that operate under principles of property law like those of Kentucky, and has been answered conformably to the rationale reached in *Teel.*

In *Dauphin Island Property v. Callon Inst.*, 519 So.2d 948 (Ala.1988), Dauphin conveyed a royalty deed to Dumont, who was succeeded by Callon. As part of the conveyance, Dauphin reserved the right to grant future leases affecting that interest in minerals, subject to Dumont's royalty rights. Dauphin argued that this provision violated the rule against perpetuities because Dumont's interests were contingent both upon the production of the minerals on the lands, and upon the execution of future leases on the lands, neither of which was required to occur within the time limit of the rule against perpetuities. The court answered, *Id.* at 951:

> We do not think it sound to view a royalty interest in minerals as personal property simply because the profits therefrom may be realized only when the minerals are extracted, but we do not find it necessary to hold that royalty interests are real property for all purposes ... *[We] hold that, whether a non-participating royalty interest be construed as an interest in the minerals or as a personal property right in the minerals once they are extracted, it does not violate the rule against perpetuities, because it is a vested interest even though uncertain in the enjoyment.* [emphasis added.] 'The applicable rule of construction is that, 'if futurity is annexed to the substance of the gift, it is *contingent*, but if annexed to the time of payment, enjoyment, or delivery of possession, it is *vested.*' [citations omitted]. The contingencies attendant upon the value and alienability of a non-participating royalty (i.e., whether there is oil under this land and whether it will ever be extracted) are exactly the same as those attendant upon the value and alienability of the full mineral fee once that is severed from the surface rights. Thus, to hold the royalty interests void would compel a holding that severance of the mineral interest also violates the rule against perpetuities because it is uncertain whether anyone will ever obtain minerals. Such a result would comply neither with accepted practices nor with the purposes of the rule against perpetuities.

*Dauphin Island* cited *Hanson v. Ware*, 224 Ark. 430, 274 S.W.2d 359 (1955), as "the leading case establishing that a perpetual non-participating royalty interest does not violate the rule of perpetuities," and commended its rationale.

> The appellees' estate [a perpetual nonparticipating oil and gas royalty] was doubtless speculative in value, but the uncertainty stemmed from a fundamentally different reason from that which makes an ordinary contingent remainder an estate of doubtful worth.... The appellees' title being complete, the doubt is occasioned not by the possibility that some one else may acquire the property but by the possibility that there may in fact be no oil and gas within the land. In short, the typical contingent remainderman has an uncertain interest in the fee simple, while these appellees have a fee simple interest in the uncertain.

> .... In the analogous case of a *profit a prendre*, such as the perpetual right to take game or fish from another's land, the estate in real property is a present vested interest which is unaffected by the rule against perpetuities. Gray, THE RULE AGAINST PERPETUITIES (4th Ed.),

§ 279. Although the owner of such a privilege acquires a personal property interest whenever he bags a duck or lands a fish, this action is merely an incident in the enjoyment of the estate in real property. *Id.* at 950.

The rule that a conveyance of a perpetual nonparticipating royalty vests an immediate interest in real property and so is not subject to the rule against perpetuities is generally held. *See* among others, *J.M. Huber Corp. v. Square Enter., Inc.*, 645 S.W.2d 410 (Tenn. App.1982); *Price v. Atlantic Ref. Co.*, 79 N.M. 629, 447 P.2d 509 (N.M.1968); *Conway Land, Inc. v. Terry*, 542 So.2d 362 (Fla.1989). There are exceptions. The law of Kansas, for instance, [unlike the law of Kentucky] treats a royalty interest as personal property which does not vest until the mineral is severed from the ground, so that any attempt to create a perpetual nonparticipating royalty interest would violate the rule against perpetuities. *See, e.g., Cosgrove v. Young*, 230 Kan. 705, 642 P.2d 75 (1982).

Peabody cites also *Cities Service Oil Co. v. Sohio Petroleum Co.*, 345 F.Supp. 28 (W.D.Okla.1972) as authority that an assignment of a mineral lease in which an overriding royalty interest was reserved as to new leases acquired by the assignee after the assigned lease expired violated the rule against perpetuities under Oklahoma law. That holding rests on a decision of the Supreme Court of Oklahoma, *Melcher v. Camp*, 435 P.2d 107 (Okla.1967). *Melcher*, however, involved neither a perpetual nonparticipating royalty interest nor overriding royalty. The question in *Melcher* was whether an option or preemptive option to purchase or repurchase in a oil and gas lease was subject to the rule against perpetuities. It should be noted that, thereafter, *Independent Gas & Oil Producers, Inc. v. Union Oil Co. of Calif.*, 669 F.2d 624 (10th Cir.1982), the court decided that under Oklahoma law, the property interest of an oil lease assignor in any renewals or extensions of the lease vested at the time of the assignment. Thus, the rule against perpetuities did not preclude the assignor's overriding royalty from attaching to a subsequent lease which was, in effect, a renewal of the original lease.

We conclude that the 1946 royalty agreement does not violate the Kentucky common law rule against perpetuities. The provision in contention does not encumber alienation. Rather, the nonparticipating royalty tends to promote, not inhibit, the leasing of the minerals and, hence, the profitable use of land. *See* Meyers, *The Effect of the Rule Against Perpetuities on Perpetual Non–Participating Royalty and Kindred Interests*, 32 Tex. L.Rev. 369 (1954).

We affirm the judgment of the trial court which reached the correct result, even though for an incorrect reason. *Orrock v. Crouse Realtors, Inc.*, 813 S.W.2d 929, 932[7] (Mo.App.1991).

■ Peabody also argues that the Commerce petition is subject to dismissal for failure to join parties that are indispensable under Rule 52.04. A motion to dismiss was brought by Peabody in the circuit court on the ground that the plaintiffs "to join as parties the co-obligees of their contract, who as a matter of law are indispensable parties." Such a lapse results in the failure to state a cause of action, a defect of jurisdiction in the trial court. Rule 55.27(g)(2). The motion remains pending without decision.

Although it is a question that may be inquired into separately on appeal, *Justus v. Webb*, 634 S.W.2d 567, 568[2] (Mo.App.1982), the motion was brought by Peabody only after the trial court denied Peabody's motion to dismiss the Commerce Bank petition and granted the motion to dismiss Counts I, II, III and V of the Peabody counterclaims. That the Peabody motion to dismiss for failure to join indispensable parties remains unruled is not from want of judicial attention. The motion was brought in the circuit court *after* appeal of the judgment on the counterclaims was lodged in this court. The issue of whether the promise by Peabody to pay royalties was meant as a promise of a separate performance to each obligee or of a joint performance to all, may depend upon questions of fact best determined in the first instance by the trial court. *See* RESTATEMENT (SECOND) OF CONTRACTS § 297 (1979).

The point tendered for decision is declined.

The judgment is affirmed.

All concur.