## J. J. CLAY *v.* POSTAL TELEGRAPH-CABLE CO.

1. MASTER AND SERVANT. *Trespass. Cutting trees. Telegraph Co.*

   A telegraph company is liable, if its laborers, clearing its right of way, cut trees on adjoining land of another, although done contrary to the positive orders of the superintendent, if it resulted from the negligence of the latter in absenting himself, and intrusting the work to ordinary laborers, without supervision.

2. CUTTING TREES. *Liability. When size immaterial. Instruction.*

   The telegraph company so trespassing, will be liable as for cutting trees, although the evidence shows that those cut were small, in no case exceeding six or eight inches in diameter; and it is error, in instructions, to allude to them as shrubs or undergrowth.

3. PUBLIC HIGHWAYS. *Width. Right of way. Telegraph line.*

   Public roads are required to be opened and worked to a width of at least ten and not more than thirty feet. A telegraph company, given the right of way for its line along such a road, is not justified in assuming that there is a uniform legal width of thirty feet, and that it has the right to cut trees anywhere within fifteen feet of the center. It must be governed by the actual width of the road.

4. HIGHWAYS. *Jurisdiction of supervisors. Right of way. Telegraph line.*

   Boards of supervisors cannot grant to a telegraph company a right of way along the *margin* of a highway. It can confer no right outside the limits of the highway itself.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

The appellee, the Postal Telegraph-Cable Co., constructed its line of telegraph across the state of Mississippi, following the public highways. Before entering the county of Hinds, in December, 1890, it obtained an order of the board of supervisors granting it the right to erect its poles and construct its line along the public highways in said county, and, whenever necessary, "to cut, trim and remove any trees, limbs or other

obstructions in the way of same, upon the margin or within the width of said highways." The work of clearing the right of way thus secured, and of erecting the poles and stringing the wires, was done by a force of laborers under the superintendence of one Fisher. It was shown that Fisher had been instructed and cautioned not to invade private property, or to cut or trim any timber or growth of any kind on lands adjoining the granted right of way, without permission of the owners, and this order had been communicated by Fisher to the laborers employed by him.

While the laborers were engaged in clearing the route and stringing the wires along the public highway from Jackson to Clinton, they cut down many small trees on land of the plaintiff, Clay, which bordered the road. There was considerable conflict in the evidence as to the character and size of the trees cut, the witnesses for the defendant testifying that they were so small as to be nothing more than bushes or shrubs, while witnesses for the plaintiff testified that some of them were six or eight inches in diameter, large enough for posts, rails or fire-wood. The trees so cut were not within the actual roadway as laid out and used, but were growing along the roadside, some of them being within fifteen feet of the center of the road, which was of varying width.

On the day in question the superintendent, Fisher, was not with the laborers, but had remained in Jackson to superintend the removal of the camp and outfit to Clinton by rail, and the gang of laborers, numbering twenty-five or thirty, were sent on by him to prepare the route and construct the line to Clinton. He appointed no one to act in his absence as superintendent or foreman, but had generally, when absent, intrusted to one of the more intelligent of the laborers the duty of seeing owners of lands as their places were reached, and getting permission to enter and cut trees.

This action was brought by Clay against the Postal Telegraph-Cable Co. to recover $1,725, the penalty given by § 961, code 1880, for the unlawful cutting of said trees, being $15

each for oaks, and $5 each for all others alleged to have been cut on plaintiff's land.

On the trial, the court granted, among others, the following instructions for defendant :

"2. The court instructs the jury for the defendant, that if they believe from the evidence that the trespass complained of by the plaintiff was committed by the laborers in the service of defendant while under the supervision of its agent, Peter Fisher, without the knowledge of said Fisher, and against his positive instructions to them not to cut any trees, limbs or brush along the line or upon the margin of any highway while erecting their telegraph line, and, in his necessary absence, without first obtaining the consent of the abutting property-owners, then they will find for the defendant."·

"4. If the jury believe from the evidence that the defendant, at the time of the commission of the trespass complained of in plaintiff's declaration, was constructing its telegraph line along the public highway leading from Jackson to Clinton, by authority of the board of supervisors, and, pursuant to said authority, cut down trees, shrubs, undergrowth or saplings which were upon the line or within fifteen feet from the center of said road, then they will find for the defendant.

"5. If the jury believe from the evidence that the trespass complained of by the plaintiff was not the cutting down of trees growing on his land, but of shrubs or undergrowth growing upon the margin of the public highway, along which defendant was at the time constructing its telegraph line, even though they may believe from the evidence that such cutting was done upon the lands of plaintiff, they must find for the defendant."

There was a verdict for defendant.   Judgment accordingly, and, after motion for new trial overruled, plaintiff appeals.

*E. E. Baldwin*, for appellant.

It was negligence for Fisher to absent himself, and leave

the laborers to cut out the line. He had neglected to see the owners of the adjoining lands, and trusted this to one of the laborers. This case is not controlled by *Fairchild* v. *R. R. Co.*, 60 Miss., 931. The second instruction should not have been given.

The order of the board of supervisors was void. It could confer no right outside the line of the highway. Elliott, Roads and Streets, 161. The fifth instruction is erroneous in characterizing the growth as shrubs and undergrowth. The statute does not apply alone to the cutting of full grown trees. Besides, some of those cut were six or eight inches in diameter. This instruction practically amounted to a charge for the defendant.

*J. R. McIntosh*, for appellee.

This case is clearly within the rule laid down in *Fairchild* v. *R. R. Co.*, 60 Miss., 931. The theory of that case is, that the company is not liable for a trespass committed by its servants and laborers not its agents. The second instruction was therefore correct.

The third instruction is unobjectionable. It plainly limited the right of defendant to cut trees to fifteen feet on either side of the center of the road.

Clearly the fifth instruction is correct. If no trees were cut, but only shrubs and undergrowth, defendant is not liable. There were witnesses who testified that no trees, but only bushes, were cut. Defendant was entitled to an instruction based on that view of the evidence.

*Argued orally by E. E. Baldwin*, for appellant.

WOODS, J., delivered the opinion of the court.

The second instruction for defendant is defective in omitting any statement of the rule of law applicable if the jury should believe the trespass complained of resulted from the negligence of Fisher, the agent of the corporation in the

construction of its line.  If Fisher was negligent in sending out a large number of ordinary laborers to clear out the way, and erect its line, over a highway ten miles in length, even though he had instructed these laborers not to invade private property, the company was liable for the injury flowing from its agent's negligence.  The proper inquiry was, not whether Fisher was absent superintending the removal of his camp from Jackson to Clinton, but was the sending out of a gang of irresponsible laborers, without any intelligent and controlling head, with no agent of the company to perform Fisher's duty of supervising the work, under the evidence in the case, negligence on Fisher's part, and imputable to his principal?  It could not be contended that Fisher might have absolved his principal from all liability for trespasses done by a gang of ordinary laborers along or near to the highways in the state, beginning at the Alabama state line and ending at the Mississippi river, by simply absenting himself during the entire progress of the work, on any thought that his presence was necessary at his camp.  The negligence in the case supposed would not be disputed. Whether Fisher's absence for the entire day on which this injury is alleged to have been committed, with the excuse he offered for it, disclosed his negligence, should have been presented to the jury by a proper qualification of, or addition to, the second charge of appellee.

The fourth instruction given for appellee is wrong, in that it assumes the width of the road along the entire front of appellant's land to be thirty feet.  Public roads in this state may be only ten feet wide, and they cannot exceed thirty feet.  The testimony of the witnesses as to the width of the road is unsatisfactory and conflicting, but no witness undertook to say the uniform width was thirty feet.  If it was less than that, the company had no right to cut any timber within fifteen feet from the center of the road.

The fifth instruction given for appellee is clearly erroneous, and was tantamount to a peremptory charge for the telegraph

company. The case was permitted to be tried upon the assumption that young trees were not trees, but shrubs, undergrowth, bushes. The mind of the jury was diverted from the real issue by having itself directed to the cutting of what the instruction denominates shrubs or undergrowth. The evidence does not so much as hint at the cutting of a single shrub. Nor is there any support for the contention that the destruction was of undergrowth. A shrub is a low, small plant, whose branches grow directly from the earth, without any supporting trunk or stem. A tree is a woody plant, whose branches spring from and are supported upon a trunk or body—and the tree may be young or old, small or great. Undergrowth is a term applicable to plants growing under or below other greater plants. To permit the jury to find— nay, to instruct the jury that it might find—that about one hundred and fifty young trees, of varying heights and thicknesses, were shrubs and undergrowth, was fatally erroneous. Every tree on or near the appellant's entire front of a quarter or half mile was cut down, and yet, the jury is told that, if only shrubs and undergrowth were destroyed, the verdict must be for the telegraph company.

The telegraph company cannot successfully shelter a trespass under an order of a board of supervisors, which assumes to confer the right to cut timber on the lands of private persons which lie along the " margin" of the highway. The board of supervisors can confer no right to do any thing outside the limits of the highway itself, and any grant, or attempted grant, in or to the lands on the " margin"—the border, the side—of the road is utterly nugatory.

*Reversed.*