CHARLES A. KERL v. ISAIAH S. X. SMITH.

[51 South. 3.]

1. SALES. *Conditional sale. Contract. Reservation of title. Replevin.*

A seller of personal property, reserving title thereto to secure the purchase money, may maintain replevin for the property, when the buyer has breached his promise to pay for the same.

2. EVIDENCE. *Parol explanation of term in written contract. Timber. Meaning of.*

Under a written contract evidencing a conditional sale, by the terms of which the buyer was to pay for the property in timber if he owned sufficient in the neighborhood of the seller's mill, and if not then in timber to the extent of his ownership and the balance in money, the term "timber" may be shown by parol to have meant "merchantable pine timber," and to that end the business in which the seller was engaged and the meaning of the term in that business, known to both parties, may be proved, since such testimony does not contradict, but explains the meaning of the term as used in the contract.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

Kerl, appellant, was plaintiff in the court below; Smith, appellee, was defendant there. The case was begun in the court of a justice of the peace and appealed to the circuit court. From a judgment of the circuit court in favor of the defendant the plaintiff appealed to the supreme court.

Plaintiff instituted replevin to recover from defendant the possession of a horse alleged in the affidavit in replevin to be wrongfully detained by defendant. Plaintiff was engaged in the manufacture of pine timber, his mills being in the Lard

neighborhood, and entered into a written contract with defendant in these words:

"2/7—07.

"Contract between C. A. Kerl and I. S. X. Smith.

"I, this day sell to C. A. Kerl what timber I have on hand belonging to me in the Lard neighborhood for one dollar per thousand on the stump, for which I received one hundred dollars in payment in one roan horse, which shall remain the property of said C. A. Kerl until said timber is delivered, and if I do not own one hundred thousand feet of timber I shall make up the difference in money.

"I. S. X. Smith."

Plaintiff attempted to show that the word "timber" in the contract meant "merchantable pine timber" and that only fifteen thousand feet of such timber could be cut from the defendant's land in question, which at the agreed purchase price would be fifteen dollars, and that accordingly defendant owed him a balance of eighty-five dollars in money for the horse. The trial court refused to allow such evidence, and peremptorily instructed the jury to find for the defendant.

*Jones & Tyler,* for appellant.

According to the contract executed and delivered by appellee, the horse was to remain the property of Kerl until one hundred thousand feet of timber were delivered, and if there was not sufficient timber on the land, then, in that event, appellee was to make up the balance in cash. The sale of the horse by appellant to appellee was conditioned on the payment by Smith of $100, either in timber at the price of one dollar per thousand feet, or, in money, the title to the horse remaining in appellant until the purchase price was paid. The unbroken line of authority in this state is that is such case, replevin will lie. *Ketchum v. Brennan,* 53 Miss. 596; *Duke v. Shackleford,* 56

Miss. 554; *Dedrick v. Wolfe,* 68 Miss. 506; *Journey v. Priest-ley,* 70 Miss. 586; *Foundry Co. v. Ice Company,* 72 Miss. 615; *Polle v. Rouse,* 73 Miss. 717; *Young v. Salley,* 83 Miss. 364.

The rule of law is that the reservation of title is but a security for the purchase price, and if the property is recovered by the seller, he must deal with it as security, and with reference to the equitable rights of the buyer, but this does not abridge the right of the seller to maintain replevin for the property.

The appellant met the burden of proof by showing that the sale of the horse was conditional, and that the condition, namely, the payment of one hundred thousand feet of lumber, or the balance in cash, had been broken. *Ketchum v. Brennan, supra.* The appellee, when sued, having stood on his ground and contested the right of the appellant in the property, was estopped to rely on the failure and demand the property. *George v. Hewlett,* 70 Miss. 1. Moreover, the evidence shows that appellant did demand the amount remaining unpaid, call-ing upon appellee to pay the amount due on the purchase price after deducting the value of the timber delivered. Therefore, the exclusion of the evidence offered by the appellant and the direction of a verdict for appellee was erroneous and the judg-ment should be reversed.

The standards of interpretation are divided into four classes: (a) the popular standard, meaning the common and normal sense of words; (b) the local standard, including the special usages of a religious sect, a body of traders, etc.; (c) the mutual standard, covering those meaning which are peculiar to both or all the parties to a transaction, but shared in com-mon by them; (d) the individual standard of one party to an act, as different to that of the other party, or parties, if any. 4 Wigmore Ev. § 2461-65. The contract in this case in which the word "timber" is used, falls clearly within the third standard of interpretation. The term "timber" is not a generic term. It has no single, certain and definite meaning in the sense in

which it is used in the contract between these parties, and while the appellant cannot claim to enforce his individual standard of meaning; yet, to explain and show the sense in which the word was mutually used by both parties, does not contravene the two rules opposed, in some cases, to the operation of the third standard; so that the general principle has full sway. The word "timber" may mean one of many things, differing widely according as it is used. *Donworth v. Sawyer,* 94 Me. 243; Century Dictionary; Webster's Dictionary; *United States v. Stores,* 14 Fed. Rep. 824; *Hubbard v. Burton,* 75 Mo. 65; *Wilson v. State,* 17 Tex. App. 393.

The contract is in fact ambiguous, and, by every rule of evidence, susceptible of explanation by extrinsic evidence tending to show the meaning of the word "timber" as used in this contract.

*M. McCullough,* for appellee.

Appellant's testimony showed that all of the pine timber was never cut and removed by appellant from the land. On that point his testimony shows that many pine trees are still standing on the aforesaid land, and that some trees were cut and left lying there to waste, and that many others, after being felled, only portions of them were removed. Appellant's testimony also shows that this was woodland having on it much oak, pine and gum, all varying in size suitable for general use as timber. All of which together would furnish appellant more than one hundred thousand feet. The great bulk of this timber was left on the land and was still there when this suit was filed.

As to appellant's first argument as to the meaning of the word "timber." Wigmore, as well as other authorities, agrees that where the writing itself contains ambiguity, then parol testimony may be heard to explain the meaning of the terms of the written contract. Following other authorities this court has uniformly held that the plain meaning and terms of a writ-

ten contract or agreement cannot be explained away by parol testimony, as appellant attempted to do in the case at bar. The contract plainly says, "I, this day sell to C. A. Kerl what timber I have on land belonging to me in the Lard neighborhood," etc. The appellant could have claimed all timber on this land under this written sale up to one hundred thousand feet, with the right to select any variety of wood he might choose. Appellee maintains he must stand by the plain and most commonly accepted meaning of the word "timber" and in doing so must take all the timber sold to him before he can maintain this action. 4 Wigmore, §§ 2461 *et seq.*

First, appellee must be in default before appellant can rightfully demand the property or maintain suit for recovery. The timber was ready to be delivered on the stump, and until that timber is taken up, appellee is not in default, and is entitled to have all the timber theron credited at one dollar per thousand feet. Secondly, the appellant, by the very terms of the contract, retains title to the horse only until said timber is delivered. The writing expressly says that "if I do not own one hundred thousand, I shall make up deficiency in money." After the timber is delivered on the stump, appellant has only a lien for balance of purchase money. Hence if it is appellant's contention that all the timber under the contract has been taken by him, then he can only maintain his suit for balance of purchase money.

Mayes, J., delivered the opinion of the court.

This contract is ambiguous in some of its aspects, but it is plain that the parties thereto intended that the title to the horse should remain in the seller until the horse had been paid for, either in timber of the value of $100, or in so far as the value of the timber would go to make up the $100, the balance to be paid in money. Any other construction of the contract narrows its meaning to such an extent as to nullify its plain intent.

Under numerous decisions of this court, not necessary to be here cited, but which are found in the brief of counsel for appellant,. this court has held that the seller, under a contract of this kind,. could maintain the action of replevin.

It was competent for the plaintiff to show what was meant by the word "timber" in this contract, and it was error for the court to exclude testimony offered for this purpose. The use of the word "timber" in the contract, with nothing in the. contract to explain what kind of timber is meant, is not so accurate a designation of what was sold as to preclude investigation as to what was meant by it in this ambiguous contract. It was permissible for plaintiff to show what particular business he was engaged in and known- to defendant, and what the common acceptation of the word "timber" meant in that business and at the place where he was conducting it. Such testimony is in no sense contradictory of the terms of the contract, but it is essential to explain its meaning, since the contract itself does not do that.

*Reversed and remanded.*