152 So. 450

**NETTLES et al. v. LICHTMAN et al.**

2 Div. 37.

Supreme Court of Alabama.

Jan. 11, 1934.

C. H. Penick and Harwood & McQueen, all of Tuscaloosa, for appellants.

Wright, Warren & Searcy, of Tuscaloosa, for appellees.

**GARDNER, Justice.**

This appeal turns upon the proper construction of the deed (Exhibit A to the bill) executed by Charles Lichtman and wife to Black Warrior Lumber Company in February, 1919, the salient features of which appear in the report of the case. The description of the property conveyed as found in the granting clause is: "All the trees and timber now standing, lying or being or which within a period of twenty (20) years from the date of this instrument, may grow upon the following described lands."

In recent years paper mills have been established in this state (the first, as alleged in the bill, in the summer of 1928 at Tuscaloosa), and a market thereby created for "all woody plants suitable for paper mill or pulp stock," measuring less than eight inches in diameter at the stump twelve inches from the ground.

Trees suitable for this purpose are claimed by defendant to have been embraced in the conveyance to the Black Warrior Lumber Company under the designation of "trees" in the clause above noted, and they insist their right to cut the same is established thereby. Forcible and plausible arguments are presented to sustain this view, and clearly the broad definition of the word "trees," standing alone, would justify this contention. Corpus Juris, vol. 63, p. 852, defines a tree as "a woody plant whose branches spring from and are supported upon a trunk or body." The Mississippi court, in Clay v. Postal Tel. Co., 70 Miss. 406, 11 So. 658, 659, makes use of a like definition with the added words, "and the tree may be young or old, small or great." See, also, Webster's New Internat'l Dictionary (1911 Ed.) p. 2191; Funk-Wagnalls, New Standard Dictionary, p. 2556. And, so considered, every part of the tree would pass by the conveyance, including all branches. Compton v. Hardin, 210 Ala. 179, 97 So. 686.

But the word does not stand alone, and other considerations to be noted lead us to a conclusion in harmony with the decree rendered. It is associated in this clause with the word "timber," which was defined in Gulf Yellow Pine Lumber Co. v. Monk, 159 Ala. 318, 49 So. 248, as "such stuff as is suitable for building and allied purposes" (see, also, Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417), while in Zimmerman Mfg. Co. v. Wilson, 202 Ala. 340, 80 So. 422, the court recognized that the word "timber" has an enlarged or restricted sense, according to the connection in which it is employed. Kerl v. Smith, 96 Miss. 827, 51 So. 3; 25 Cyc. 1545. Like thought was expressed in Pennington v. Avera, 124 Ga. 147, 52 S. E. 324, where the court said: "The meaning to be given the term depends upon the connection in which it is used, and sometimes upon the occupation of the person who uses the term. In construing a contract where the word appears, it is not only proper, in determining what is intended by the parties, to look to the terms of the contract, but also the occupation of the contracting parties, and the purpose for which the contract was entered into."

And it is the well-settled rule that, where the language of a deed is ambiguous, the intention of the parties may be ascertained by a consideration of the surrounding circumstances existing at the time of its execution, and for this purpose the court will place itself as nearly as possible in the position of the parties when the instrument was executed. 18 Corpus Juris, p. 260. To ascertain the intent in respect to the property conveyed, reference may be had to the state of facts as they existed when the instrument was made, and to which the parties may be presumed to have had reference. 18 Corpus Juris, 280. Of course the entire instrument is to be considered, and, if it can be reasonably done, and not inconsistent with the general intent of the whole instrument, effect and meaning should be given to every clause, word, and expression, so that the deed may operate according to the intention of the parties. 18 Corpus Juris, 258. These general rules were here recognized in the recent case of Walker v. Smith Lumber Co., 226 Ala. 65, 145 So. 572, 574, where it was said: "Deeds of bargain and sale * * * for a valuable consideration are to be construed most strong-

ly against the grantor and in favor of the grantee, and, of course, in the matter of construction it is the duty of the court to look at the whole conveyance, the circumstances under which the contract was made, the relative position of the parties, and the purpose and object designed to be accomplished. The intention of the parties to the instrument, when clearly ascertained, is of controlling efficacy."

Numerous cases serve to illustrate these general rules. Note to Balderson v. Seeley, 19 Ann. Cas. 1049. Among them, in our own court, is that of W. T. Smith Lumber Co. v. Jernigan, 185 Ala. 125, 64 So. 300, 301, Ann. Cas. 1916C, 654, where the description in a conveyance of "timber suitable for sawlogs," was on account of local custom and usage at the time of its execution, given a more restrictive meaning so as to include pine timber only; the court saying: "Standing alone and unexplained, we would unhesitatingly say that the words 'timber suitable for sawlogs' meant any sort of sawlogs, whether of oak, chestnut, hickory, poplar, or ash. This deed was made, however, nearly 20 years ago, and it may be that in the section in which this timber was situated the word 'sawlogs' had at that time a well-understood local meaning, and that this local meaning was well understood by the parties when the deed was made and delivered. The written reservation in the deed is but the memorial of the contract, the thing upon which the minds of the parties met, and, of course, the thing which they agreed to was the contract between them. If 'sawlogs,' then, had a restricted meaning, and the parties used that word in that restricted meaning, the fact that, since that time, the meaning of that word has been broadened does not broaden the rights of appellant." See, also, Wright v. Bentley Lumber Co., 186 Ala. 616, 65 So. 353; Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417.

Illustrative cases elsewhere and here more nearly in point are Kaul v. Weed, 203 Pa. 586, 53 A. 489, 490, and Great So. Lbr. Co. v. Newsom Bros., 129 Miss. 158, 91 So. 864, 865. In the former, it appeared that at the time of the execution of the deed, no chemical factories had been established in that locality, and no market then existed for chemical or pulpwood, with the added feature that the grantees had not cut such pulpwood until after the land had been cut over for timber purposes and the logs removed. Giving effect to the intention of the parties at the time the contract was entered into, it was held that the pulpwood was not embraced in the description "all and all manner of timber, down and standing, save and except hemlock timber." Conversely, in the latter case (Great So. Lumber Co. v. Newsom Bros.) the proof disclosed that several years previous to the purchase of the merchantable timber there

was a market price in that locality for paper wood timber caused by the near location of two paper mills; the wood timber so used being pine timber from three inches in diameter up to eight inches, including tops of trees of this diameter already cut. Discussing this question, the court said:

"In the case of Kerl v. Smith, 96 Miss. 827, 51 So. 3, this court held that the use of the word 'merchantable' in a contract, with nothing to explain what kind of timber was meant, was not so accurate a designation of what was sold as to preclude investigation as to what was meant by it in the contract.

"Years ago, when practically the only use made of timber was to manufacture it into lumber, it was then held that merchantable timber was only those large sticks of wood squared or capable of being squared for building houses or vessels. Since which time, however, the uses of timber have multiplied; among other things is now that of manufacturing small timber into paper. We have these paper mills scattered over the country, and in their vicinity there is always a market price for this small timber which can be manufactured into paper. This is well expressed in the opinion of the court in the case of U. S. v. Stores [C. C.] 14 F. 824, where it is said:

"'But the numerous uses to which wood has come to be applied, and the general employment of all kinds of trees for some valuable purpose, has wrought a change in the general acceptation of terms in connection therewith, and we find that Webster defines "timber" to be "that sort of wood which is proper for buildings or for tools, utensils, furniture, carriages, fences, ships, and the like."'

"Again in the case of U. S. v. Soto, 7 Ariz. 230, 64 P. 419:

"'Timber' includes 'all kinds of wood used either for building purposes or in the manufacture or construction of useful articles.'

"'Merchantable,' as defined in 27 Cyc. 481, is 'salable and fit for the market; sound and undamaged; such as is generally sold in the market; vendible in the market.'

"At the time the plaintiffs purchased this timber, the small timber was salable and had a market value as paper wood or pulp wood timber; that is, timber suitable to be manufactured at a paper mill into paper. Under this testimony we therefore conclude that this small timber was merchantable timber, and therefore the title to it passed to the appellees under their deeds."

■ Giving application to the principles herein noted, we are to determine the intention of the parties with reference to the property conveyed at the time the deed was executed. The bill discloses that in 1918, the vendor and vendee entered into negotiations with reference to the sale of timber suitable for lumber, and, as a part of said negotiations, a

timber cruiser was selected by each, and these cruisers during many weeks under the direction of the parties to this sale jointly cruised all pine timber that would measure eight inches in diameter and up at the stump, and all hardwood timber measuring fourteen inches and up in diameter at the stump twelve inches from the ground. After the completion of this cruise of the timber, the sale was culminated as shown by the deed executed on February 25, 1919, and prepared by the attorney of the purchaser. When this deed was thus completed, it was not the custom to cut or use woody plants growing on land in that locality which measured less than eight inches in diameter at the stump twelve inches from the ground, and there were no paper or pulp mills anywhere in the state of Alabama, and no demand or market at that time in that locality for woody plants which measured less than eight inches in diameter at the stump twelve inches from the ground, usually used in paper mills, and such woody plants were not customarily cut or used, and could not at that time be profitably cut and marketed for any purpose.

The defendants, by purchase, acquired the rights and interest of the original vendee in the timber conveyed and in 1929, 1931, and 1932 cut all the timber on the lands that measured eight inches and upward at the stump twelve inches from the ground, and manufactured the same into lumber at a sawmill then operated by them on or in the vicinity of the land, which mill was in December, 1932, moved from its then location to a point some thirty miles away.

The bill further shows that in the summer of 1928 the first paper mill in Alabama was located at Tuscaloosa, which was twenty-five miles north of the lands described in the deed, and began operation in April, 1929, and that since that time, within a radius of forty miles of Tuscaloosa, there has been continuously a demand for woody plants growing on lands which measure less than the eight inches in diameter referred to for conversion into paper at said paper mill; during the year 1929 another paper mill was located at Mobile, and these constitute the only paper mills in the state, but that paper mill stock on the lands here involved can only be profitably marketed at the Tuscaloosa mill.

Defendants now claim the right, and threaten to cut all woody plants suitable for paper mill or pulp stock after having previously cut all timber on the land suitable for lumber.

These averments suffice to show that, looking at the whole conveyance, the circumstances under which it was made, the relative position of the parties, and the purpose designed to be accomplished, the parties did not intend by the use of the word "timber" to include such as suitable only for paper mills,

as the bill's averments show there was in that locality no market therefor at the time, and the parties had in mind no such use. Gulf Yellow Pine Lbr. Co. v. Monk, 159 Ala. 318, 49 So. 248; W. T. Smith Lbr. Co. v. Jernigan, 185 Ala. 125, 64 So. 300, Ann. Cas. 1916C, 654; Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417; Wright v. Bentley Lumber Co., 186 Ala. 616, 65 So. 353; Kaul v. Weed, 203 Pa. 586, 53 A. 489.

■ Nor do we consider the use of the words "all the trees" preceding the words "and timber" in the granting clause sufficient for a contrary conclusion.

There is a well-known and ancient maxim, noscitur ex sociis—the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it— broader in its scope than the kindred maxim, ejusdem generis, which has been given frequent application by this court. Life & Casualty Ins. Co. v. Bottoms, 225 Ala. 382, 143 So. 574; Louis Pizitz Dry-Goods Co. v. Fidelity & Deposit Co., 223 Ala. 385, 136 So. 800; Street v. Treadwell, 203 Ala. 68, 82 So. 28; State v. Western Union Tel. Co., 196 Ala. 570, 72 So. 99.

The word "trees" is here closely associated and connected with the word "timber" and takes color therefrom. And the remainder of the deed adds confirmation to this view. In the habendum clause the language is the above-described and herein granted timber, and the covenants of warranty as to title make reference to the timber. The right of ingress and egress is granted over all the lands on which "said timber" is located for the purpose of removing "said timber," with the right to construct mills for manufacturing "timber and lumber," with all other necessary privileges to enable the grantee to manufacture and remove "said timber, or any other timber owned by it." The grantee is given the right also to construct "timber, lumber and log yards and the like, and using loading places for timber, logs and lumber."

It is seen, therefore, that every reference in subsequent provisions of the deed relating to the use and purpose for which the purchase was made is to timber and lumber, all tending strongly to show that the use of the word "trees" in the granting clause was intended to mean no more than trees suitable for timber purposes, and, viewed in the light of all the facts and surrounding circumstances outlined in the bill, lead the judicial mind irresistibly to the conclusion that the pulpwood threatened by defendants to be now cut was not in contemplation of the parties and not intended to be passed by the conveyance. So viewed, there is ambiguity in the granting clause, and in fact no irreconcilable conflict between the granting and habendum clauses. Dickson v. Van Hoose, 157 Ala. 459, 47 So. 718, 19 L. R. A. (N. S.) 719.

But, as said in the Dickson Case, supra, where the real intention of the parties can be gathered from the instrument itself, arbitrary rules are not of controlling importance. The first and cardinal rule of construction of a deed is to ascertain, if possible, from the language employed, the intention of the parties and then give effect thereto, if it violates no law. The intention of the parties to the instrument, when clearly ascertained, is of controlling efficacy. Walker v. W. T. Smith Lumber Co., 226 Ala. 65, 145 So. 572; Campbell v. Gilbert, 57 Ala. 570.

We are well persuaded that the language of the deed, interpreted in the light of all surrounding facts and circumstances outlined in the bill, clearly manifests the intention of the parties at the time of its execution as in accord with the chancellor's ruling, and that the decree rendered is correct, and should be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.