938 So.2d 398 (2006)
MOBILE PRESS REGISTER, INC.
v.
James H. LACKEY, presiding judge of the Mobile Municipal Court, and Pete Pederson, court administrator for the Mobile Municipal Court.
James H. Lackey, presiding judge of the Mobile Municipal Court, and Pete Pederson, court administrator for the Mobile Municipal Court
v.
Mobile Press Register, Inc.
1041260 and 1041371.
Supreme Court of Alabama.
March 10, 2006.
*399 Edward S. Sledge III, Archibald T. Reeves IV, and Heather R. Guidry of McDowell, Knight, Roedder & Sledge, L.L.C., Mobile, for appellant/cross-appellee Mobile Press Register, Inc.
John L. Lawler and E. Ashton Hill III, City of Mobile Legal Department, for appellees/cross-appellants James H. Lackey, presiding judge of the Mobile Municipal Court, and Pete Pederson, court administrator for the Mobile Municipal Court.
LYONS, Justice.
These appeals present some difficult questions of first impression, requiring this Court to reconcile the statutorily recognized general principle of the public's right to know about the affairs of government, § 36-12-40, Ala.Code 1975, with a statutorily created exception arguably applicable to records of judicial proceedings. See § 41-9-590 et seq., Ala.Code 1975.

I. Facts and Procedural History
At some time before February 2005, the Mobile Press Register, Inc. ("MPR"), requested the Mobile Municipal Court to produce its records pertaining to criminal charges filed against David Thomas, a public official in Mobile. A representative from the municipal court informed MPR that no such records existed. However, upon further investigation, the municipal court discovered that the records did exist, but that they had been what the parties describe as "expunged."[1] MPR *400 requested access to all records that the Mobile Municipal Court had "expunged" since 1988, but the municipal court refused to give MPR access. MPR then sued the municipal court, naming as defendants James H. Lackey, the presiding judge of the Mobile Municipal Court, and Pete Pederson, its court administrator. MPR sought preliminary and permanent injunctions preventing the Mobile Municipal Court from expunging its records in the future and directing it to grant MPR access to all records that had been expunged since 1988. After MPR filed its complaint, the municipal court released its file on David Thomas to MPR. However, the municipal court continued to refuse MPR access to other expunged files.
After a hearing, the circuit court entered an order holding that the municipal court had no authority to expunge its records and entering a permanent injunction prohibiting the court from doing so in the future. However, the circuit court refused to order the municipal court to grant MPR access to previously expunged files, because MPR had not given a good reason for the circuit court to subject the municipal court to what the circuit court described as an "extremely overbroad and cumbersome" process.
MPR has filed in this Court a motion to dismiss the cross-appeal filed by Lackey and Pederson (case no. 1041371) as untimely filed. MPR argues that the cross-appeal is untimely because, it says, the circuit court's order was interlocutory rather than final. However, because MPR refers to the circuit court's order as final in its brief and because the issues raised in the cross-appeal have been fully briefed, we treat the circuit court's order as final, and we deny MPR's motion to dismiss the cross-appeal.
MPR appealed, arguing that the circuit court's refusal to provide it access to the expunged records was inconsistent with the court's holding that the municipal court had no authority to expunge those records. The municipal court cross-appealed, arguing that the circuit court erred in ruling that it had no authority to expunge its own records.

II. Standard of Review
"[A] permanent injunction is reviewed de novo.

". . . .
"To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest."
TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1241-42 (Ala.1999).

III. Analysis
The municipal court argues that the legislature provided for the expungement[2] of *401 criminal records by enacting § 41-9-590 et seq., Ala.Code 1975 ("the ACJIC Act"), which created the Alabama Criminal Justice Information Center ("the ACJIC"), a "system for the interstate and intrastate accumulation, storage, retrieval, analysis and dissemination of vital information relating to certain crimes, criminals and criminal activity. . . ." § 41-9-591, Ala. Code 1975.

A.
The municipal court contends that § 41-9-625, Ala.Code 1975, evidences the legislature's intent to facilitate the expungement of criminal records when an arrested individual is not convicted. Section 41-9-625 provides:
"All persons in this state in charge of law enforcement and correction agencies shall obtain or cause to be obtained the fingerprints according to the fingerprint system of identification established by the commission, full face and profile photographs, if photo equipment is available, and other identifying data of each person arrested for an offense of a type designated in Section 41-9-622, [Ala. Code 1975,] of all persons arrested or taken into custody as fugitives from justice and of all unidentified human corpses in their jurisdictions, but photographs need not be taken if it is known that photographs of the type listed taken within the previous year are on file. Fingerprints and other identifying data of persons arrested for offenses other than those designated in this article may be taken at the discretion of the agency concerned.
"If any person arrested or taken into custody is subsequently released without charge or cleared of the offense through criminal justice proceedings, such disposition shall be reported by all state, county and municipal criminal justice agencies to ACJIC within 30 days of such action, and all such information shall be eliminated and removed."
(Emphasis added.)
According to § 41-9-590, Ala.Code 1975, "criminal justice agencies" include "public agencies at all levels of government which perform as their principal function activities or planning for such activities relating to the identification, apprehension, prosecution, adjudication or rehabilitation of civil, traffic and criminal offenders." (Emphasis added.)
This Court questions whether the legislature clearly intended the ACJIC Act to regulate how courts manage their own records. For example, § 41-9-642, Ala. Code 1975, prohibits disclosure of "criminal histories" to entities that do not have the "need to know" or the "right to know" of those criminal histories. Of course, judicial records have historically been considered public records. See, e.g., Ex parte Consolidated Publ'g Co., Inc., 601 So.2d 423, 426 (Ala.1992) (declining "to provide a detailed historical analysis of the progression of the cases involving the public's and the press's access to criminal proceedings," and instead referring to cases that "illustrate the development of the law in this area"). Therefore, § 41-9-642 provides some evidence indicating that the legislature, when it promulgated the ACJIC Act, contemplated that the Act would regulate information that was not at that time considered to be public information, i.e., records other than judicial records.
We also note that 42 U.S.C. § 14616, an analogous federal statute, explicitly includes "courts" in its definition of "criminal justice agencies," while the definition of that term in the ACJIC Act does not include courts. Further, § 41-9-645, Ala. Code 1975, which gives an individual the right to request that a criminal justice *402 agency "purge, modify or supplement" his or her records, provides for judicial review of the agency's decision on the individual's request in the circuit court. If the definition of criminal justice agencies in § 41-9-590(1) includes a circuit court, then § 41-9-645 confers upon a petitioner the hollow right to ask the circuit court to review its prior adverse ruling. That the right of appeal under § 41-9-645 is to the circuit court is further evidence that the ACJIC Act was not intended to regulate court records.
Nevertheless, consistent with the municipal court's contention on appeal, one might argue that a municipal court engages in "activities or planning for such activities relating to . . . adjudication." § 41-9-590(1). In other words, it is arguable that the reference to agencies that engage in "activities or planning for such activities" includes the courts themselves and not simply those agencies discharging functions ancillary to, but separate from, the courts. However, we do not expressly answer that question here because it is unnecessary to the disposition of this case. This is so because, assuming without deciding that the ACJIC Act applies here, we conclude that it in no event countenances the actions of the municipal court in this proceeding.
Based on the assumption that the ACJIC Act applies, under § 41-9-625, "[i]f any person arrested or taken into custody is subsequently released without charge or cleared of the offense through criminal justice proceedings" in a municipal court, that court must report, directly or indirectly, such disposition to the ACJIC. As previously noted, once the information that the person has been released without charge or cleared is reported, the second paragraph of § 41-9-625 provides that "all such information shall be eliminated and removed." (Emphasis added.) We conclude that "such information" refers to "fingerprints," "full face and profile photographs," and "other identifying data," which are all mentioned in the preceding paragraph. See also § 41-9-623, Ala.Code 1975 (requiring "[a]ll criminal justice agencies within the state [to] submit to the ACJIC . . . fingerprints, descriptions, photographs . . . and other identifying data on [individuals arrested for certain crimes]"). While "other identifying data" is not defined, "the ejusdem generis principle of statutory construction [aids us in determining] the intent of the legislature. Under that principle, where general words follow specific words in a statute, the general words are construed to embrace only objects similar to those objects enumerated by the specific words." Ex parte Cobb, 703 So.2d 871, 875 (Ala.1996). Therefore, we conclude that "other identifying data" included within the "such information" required to be "eliminated and removed" by § 41-9-625 is information that can be used to track down and identify persons in the manner that photographs and fingerprints are used. Examples include an individual's blood type, height, weight, hair color, eye color, scars, physical deformities, etc.
Section 41-9-625 therefore does not authorize (assuming the ACJIC Act applies) the municipal court to expunge entire files. Here, the existence of, and thus all the information contained in, entire files on criminal defendants have been hidden from the public. Accordingly, § 41-9-625 does not support the municipal court's position.

B.
Section 41-9-645, Ala.Code 1975, gives individuals believing their criminal records to be "inaccurate or incomplete" the right to request that the original agency having custody or control of those records purge, modify, or supplement those records, to the extent doing so would remedy *403 the inaccuracy or incompleteness.[3] Considering the import of the terms used in association with "purge" in § 41-9-645, i.e., "modify" and "supplement," we construe "purge" to mean something less than complete expungement. See Strickland v. General Motors Acceptance Corp., 578 So.2d 1275, 1277 (Ala.1991) (citing "the maxim noscitur a sociis, i.e., the principle that the meaning of words may be indicated or controlled by those with which they are associated"). See also Nettles v. Lichtman, 228 Ala. 52, 56, 152 So. 450, 454 (1934) ("There is a well-known and ancient maxim, noscitur [a] sociisthe meaning of a doubtful word may be ascertained by reference to the meaning of words associated with itbroader in its scope than the kindred maxim, ejusdem generis, which has been given frequent application by this court."). The term "purge" means: "to make free of something unwanted." Merriam-Webster's Collegiate Dictionary 1010 (11th ed.2003). In other words, if the ACJIC Act applies to court records, then a record that contains inaccurate or incomplete information may be purged of that information. In the instant case, the municipal court has admitted that it has not been purging, modifying, or supplementing records only to the extent needed to correct inaccuracy or incompleteness. Rather, it has simply been removing the existence of its records from public databases based on no set standard. The ACJIC Act, even if applicable, does not authorize such activity.

IV. The Legislature's Prerogative
Whether citizens should be entitled to have their criminal arrest records expunged is a substantive matter involving policy considerations within the purview of the legislature, not this Court. Cf. § 12-15-103, Ala.Code 1975 (allowing for the sealing and destruction of juvenile court files). We take this opportunity to urge the legislature to address the policy of expunging the criminal records of adults and to clarify the applicability of the ACJIC Act to courts. It is of course the legislature's prerogative to allow expungement, to reject it, or to refuse to address the issue at all. If the legislature chooses to allow expungement, we note that important considerations include whether to require notice to the State or other prosecuting agency of the expungement proceedings, along with an opportunity to object, and the right of parties to appeal the grant or denial of an expungement request, thereby giving finality to the determination. Further, what is the legal effect of an expungement? Is a person whose record is expunged entitled to state in a job application, without risk of making a false statement, that the expunged matters, such as an arrest, did not take place? We note that the legislatures of other states have provided clear guidelines for courts to follow in determining whether to expunge the criminal records of adults. See generally Kristin K. Henson, Comment, Can You Make This Go Away?: Alabama's Inconsistent Approach To Expunging Criminal Records, 35 Cumb. L.Rev. 385 (2005).

V. Conclusion
We affirm the circuit court's permanent injunction against future "expungement," that is, removal of the existence of a criminal file from public access, by the municipal court. Although the circuit court found that MPR had not given a good reason as to why the municipal court *404 should be required to submit to the "overbroad and cumbersome" process of allowing MPR access to the expunged records, at trial, the municipal court conceded that to produce the records would not actually be overly cumbersome. Finding no justification in law for the practices of the municipal court, we reverse the circuit court's ruling insofar as it denies MPR access to the expunged records and remand the case for proceedings consistent with this opinion.
1041260REVERSED AND REMANDED.
1041371MOTION TO DISMISS DENIED; AFFIRMED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, and PARKER, JJ., concur.
STUART, SMITH, and BOLIN, JJ., concur in the result.
STUART, Justice (concurring in the result).
I concur in the result reached in the main opinion. As to Part III.A. of that opinion, I join Justice Bolin's writing. With regard to Part IV of the opinion, I express no opinion because it is dicta. "Article III of the Alabama Constitution of 1901 creates the framework for the division of powers between the State's legislative, executive, and judicial branches. Each branch within our tripartite governmental structure has distinct powers and responsibilities, and our Constitution demands that these powers and responsibilities never be shared." Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000). Part IV of the main opinion overlooks the legislature's initial responsibility to weigh any benefit of the expungement of court records against the dangers of the loss of the check and balance on judicial power provided when criminal records are subject to public review and appears to advocate for expungement of court records by providing important considerations for expungement procedures. "Great care must be exercised by the courts not to usurp the functions of other departments of government. § 43, Constitution 1901. . . . Accordingly . . . courts cannot and will not interfere with the discretion vested in other units or branches of government." Finch v. State, 271 Ala. 499, 503, 124 So.2d 825, 829 (1960). It is not this Court's responsibility to express an opinion on whether such legislation should be drafted.
SMITH and BOLIN, JJ., concur.
BOLIN, Justice (concurring in the result).
I concur fully with the result reached by the main opinion. I write specially, however, to address that portion of Part III.A. of the opinion in which the Court expressly declines to answer the question as to whether the ACJIC Act applies to the expungement of any court records because, it reasons, answering that question is unnecessary to a resolution of this appeal. I would have chosen to address this issue, which was raised, briefed, and orally argued by the parties.
The main opinion is correct that in this proceeding it matters not whether the ACJIC Act is applicable, because, "assuming without deciding that the ACJIC Act applies here, we conclude that it in no event countenances the actions of the municipal court in this proceeding." 938 So.2d at 402. However, the issue whether the actions of the municipal court might have been permissible had it attempted to comply with the ACJIC Act is still a viable one, and the ACJIC Act does not, by its own words, apply to courts and court files.
Although certainly not dispositive, it is noteworthy that the entirety of Chapter 9 of Title 41 of the Code of Alabama, in which the ACJIC Act is found, concerns *405 "Boards and Commissions," not courts. Article 23 of Chapter 9 contains the ACJIC Act, and the creation and functions of the Alabama Criminal Justice Information Center are established in § 41-9-591, Ala.Code 1975, which provides:
"There is hereby created and established an Alabama Criminal Justice Information Center Commission, which shall establish, develop and continue to operate a center and system for the interstate and intrastate accumulation, storage, retrieval, analysis and dissemination of vital information relating to certain crimes, criminals and criminal activity to be known as the Alabama Criminal Justice Information Center."
(Emphasis added.) The legislature, in crafting the ACJIC Act, nowhere mentions "courts" or "court records" in this general establishment section, although it would have been easy to do so and would have removed all doubt had the legislature intended to include courts within the ACJIC Act. Rather, the ACJIC Act deals with a "system" for accumulating, storing, retrieving, analyzing, and disseminating "information."
In discussing the definition of criminal justice agencies found in § 41-9-590(1), Ala.Code 1975, the main opinion recognizes that arguably the use in that definition of the term "adjudication" might bring courts, including municipal courts, within the purview of the ACJIC Act. The entirety of this definitional section, however, states:
"(1) Criminal Justice Agencies. Such term shall include those public agencies at all levels of government which perform as their principal function activities or planning for such activities relating to the identification, apprehension, prosecution, adjudication or rehabilitation of civil, traffic and criminal offenders."
(Emphasis added.) Black's Law Dictionary defines agency as "3. A governmental body with the authority to implement and administer particular legislation" and defines "state agency" as "an executive or regulatory body of a state." Black's Law Dictionary 67-68 (8th ed.2004). These definitions fully support the concept of a governmental entity's operating a system pertaining to criminal justice information, or, put another way, performing activities relating to adjudication. It does not, however, encompass a "court," which, rather than dealing with "activities relating to . . . adjudication," concerns itself with dispute resolutionthe adjudicatory process itself.
Policy questions relating to the expungement of criminal records are for the legislature. The Alabama Legislature well knows how to draft legislation that effectively shows its intent to provide for the expungement of records and how to make it clear that such legislation applies to a court and not an "agency." The same year the ACJIC Act was passed[4] the legislature also passed the Juvenile Justice Act.[5] In § 12-15-103 of the Juvenile Justice Act as codified,[6] the legislature set out the procedure, prerequisites, and effects of both a "sealing order" and a "destruction order" concerning juvenile court files in great detail. § 12-15-103(g). It defies logic to presume *406 that the legislature, in the same general legislative session, intended to include courts and court files in such an oblique manner in the ACJIC Act as "agencies" whose activities "relate" to "adjudication," when it used such explicit language in the Juvenile Justice Act passed almost simultaneously.
The main opinion does not argue that the ACJIC Act does in fact apply to courts, but only assumes arguendo that if it did, the Mobile Municipal Court has not complied with it. Indeed, the main opinion sets out several reasons that indicate that the ACJIC Act does not apply to courts. Most telling of those reasons is that process embodied in § 41-9-645, which allows an individual to request that inaccurate or incomplete information be purged, modified, or supplemented by the original agency having custody or control of the "detail records." The ability of an individual to pursue this process of having inaccurate or incomplete information purged, modified, or supplemented cannot reasonably or rationally be compared to a procedure for *407 expunging of a complete court file or court record. The second paragraph of § 41-9-645 further states:
"Should the agency decline to so act or should the individual believe the agency's decision to be otherwise unsatisfactory, the individual or his attorney may within 30 days of such decision enter an appeal to the circuit court of the county of his residence or to the circuit court in the county where such agency exists. . . . "
Certainly, the distinction between an agency's denial and an appeal to the circuit court from that denial belies any notion that the latter is included in the former. The main opinion correctly points out that this right of appeal would be a "hollow right," because a circuit court would be reviewing its own, or another circuit court's, decision.
I would go one step further than the main opinion and affirmatively state that the ACJIC Act is not applicable to the expungement of court records.
I also join Justice Stuart's special writing insofar as Part IV is concerned.
STUART and SMITH, JJ., concur.
NOTES
[1] The files MPR is seeking are kept segregated from other files but have not been destroyed. However, all indication of their existence has been removed from public record. "Expunge" is defined in Black's Law Dictionary 621 (8th ed.1999) as "[t]o erase or destroy." "Expungement of record" is defined as "[t]he removal of a conviction (esp. for a first offense) from a person's criminal record." Black's at 621. "Sealing of records" is defined as "[t]he act or practice of officially preventing access to particular (esp. juvenile-criminal) records, in the absence of a court order." Black's at 1377. The records involved in this case have not been "expunged"; rather, they have been sealed. In practical effect, however, the records have been expunged because, although they have not been physically destroyed, all indication of their existence has been removed from public record. Therefore, for purposes of this appeal we treat the records as expunged.
[2] Merriam-Webster's Collegiate Dictionary 443 (11th ed.2003) recognizes "expunction," not "expungement," as the noun form. However, Black's Law Dictionary refers to expungement as an alternative noun form. Black's at 621. Hence, we use the term "expungement" in this opinion.
[3] Section 41-9-645 does not expressly refer to "criminal records"; rather, the first paragraph of § 41-9-645 refers to "such information." We assume that "such information" means criminal records, which are dealt with in § 41-9-643, Ala.Code 1975, the section that immediately preceded § 41-9-645 when those sections were originally adopted.
[4] Act no. 872, Ala. Acts 1975 (approved October 7, 1975).
[5] Act no. 1205, Ala. Acts 1975 (approved October 10, 1975).
[6] Section 12-15-103 provides as follows:

"(a) On motion of the part of a person who has been the subject of a delinquency petition or on the court's own motion, the court shall vacate its order and findings and order the sealing of the legal and social files and records of the court, probation services and of any other agency in the case if it finds that:
"(1) Two years have elapsed since the final discharge of the person from legal custody or supervision or two years after the entry of any other court order not involving custody or supervision; and
"(2) He has not been convicted of a felony or misdemeanor involving moral turpitude or adjudicated delinquent prior to the filing of the motion and no proceeding is pending seeking such conviction or adjudication.
"(b) The motion and the order may include the files and records specified in Section 12-15-100.
"(c) Reasonable notice of the motion shall be given to:
"(1) The prosecutor;
"(2) The authority granting the discharge if the final discharge was from an institution, parole or probation; and
"(3) The law enforcement officers, department and central depository having custody of the files and records specified in Section 12-15-100 and included in the motion.
"(d) Upon the entry of the order, the proceedings in the case shall be treated as if they never occurred and all index references shall be deleted and the court and law enforcement officers and departments shall reply and the person may reply to any inquiry that no record exists with respect to such person. Inspection of the files and records included in the order may thereafter be permitted by the court only upon motion by the person who is the subject of such records and only to those persons named in the motion; provided, however, that the court in its discretion may by special order in an individual case permit inspection by or release of information in the records to any clinic, hospital or agency which has the person under care.
"(e) Any adjudication of delinquency or conviction of a felony or a crime involving moral turpitude subsequent to sealing shall have the effect of nullifying the sealing order.
"(f) A person who has been the subject of a delinquency petition and has met the conditions stipulated in subdivision (2) of subsection (a) of this section may, five years after reaching the age of majority, file a motion requesting the destruction of all records pertaining to his case. If the court grants the motion, copies of the order shall be sent to all offices or agencies that are repositories of such records and all such offices and agencies shall comply with the order.
"(g) Upon the entry of a sealing order or a destruction order, all references including arrest, complaint, referrals, petitions, reports and orders shall be removed from all agency, official and institutional files and sealed or destroyed as aforesaid and a finding of delinquency shall be deemed never to have occurred. No child who has been the subject of such a sealing or destruction order shall be deemed to have been arrested ab initio within the meaning of the general statutes with respect to proceedings so sealed or destroyed and, in response to any inquiry or on any application or in any proceeding, the person may state that he has never been arrested, taken into custody, committed or adjudicated a delinquent with regard to the proceedings so sealed or destroyed.
"(h) A person who has been the subject of a delinquency petition shall be notified of his rights under subsections (a) and (f) of this section at the time of his final discharge."