These appeals present some difficult questions of first impression, requiring this Court to reconcile the statutorily recognized general principle of the public's right to know about the affairs of government, §§ 36-12-40, Ala. Code 1975, with a statutorily created exception arguably applicable to records of judicial proceedings. See §§ 41-9-590 et seq., Ala. Code 1975.
 I. Facts and Procedural History
At some time before February 2005, the Mobile Press Register, Inc. ("MPR"), requested the Mobile Municipal Court to produce its records pertaining to criminal charges filed against David Thomas, a public official in Mobile. A representative from the municipal court informed MPR that no such records existed. However, upon further investigation, the municipal court discovered that the records did exist, but that they had been what the parties describe as "expunged."[1] MPR *Page 400 
requested access to all records that the Mobile Municipal Court had "expunged" since 1988, but the municipal court refused to give MPR access. MPR then sued the municipal court, naming as defendants James H. Lackey, the presiding judge of the Mobile Municipal Court, and Pete Pederson, its court administrator. MPR sought preliminary and permanent injunctions preventing the Mobile Municipal Court from expunging its records in the future and directing it to grant MPR access to all records that had been expunged since 1988. After MPR filed its complaint, the municipal court released its file on David Thomas to MPR. However, the municipal court continued to refuse MPR access to other expunged files.
After a hearing, the circuit court entered an order holding that the municipal court had no authority to expunge its records and entering a permanent injunction prohibiting the court from doing so in the future. However, the circuit court refused to order the municipal court to grant MPR access to previously expunged files, because MPR had not given a good reason for the circuit court to subject the municipal court to what the circuit court described as an "extremely overbroad and cumbersome" process.
MPR has filed in this Court a motion to dismiss the cross-appeal filed by Lackey and Pederson (case no. 1041371) as untimely filed. MPR argues that the cross-appeal is untimely because, it says, the circuit court's order was interlocutory rather than final. However, because MPR refers to the circuit court's order as final in its brief and because the issues raised in the cross-appeal have been fully briefed, we treat the circuit court's order as final, and we deny MPR's motion to dismiss the cross-appeal.
MPR appealed, arguing that the circuit court's refusal to provide it access to the expunged records was inconsistent with the court's holding that the municipal court had no authority to expunge those records. The municipal court cross-appealed, arguing that the circuit court erred in ruling that it had no authority to expunge its own records.
 II. Standard of Review "[A] permanent injunction is reviewed de novo.
 ". . . .
 "To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest."
TFT, Inc. v. Warning Sys., Inc.,751 So.2d 1238, 1241-42 (Ala. 1999).
 III. Analysis
The municipal court argues that the legislature provided for the Expungement[2] of *Page 401 
criminal records by enacting §§ 41-9-590 et seq., Ala. Code 1975 ("the ACJIC Act"), which created the Alabama Criminal Justice Information Center ("the ACJIC"), a "system for the interstate and intrastate accumulation, storage, retrieval, analysis and dissemination of vital information relating to certain crimes, criminals and criminal activity. . . ." §§ 41-9-591, Ala. Code 1975.
 A.
The municipal court contends that §§ 41-9-625, Ala. Code 1975, evidences the legislature's intent to facilitate the expungement of criminal records when an arrested individual is not convicted. Section 41-9-625 provides:
 "All persons in this state in charge of law enforcement and correction agencies shall obtain or cause to be obtained the fingerprints
according to the fingerprint system of identification established by the commission, full face and profile photographs, if photo equipment is available, and other identifying data of each person arrested for an offense of a type designated in Section 41-9-622, [Ala. Code 1975,] of all persons arrested or taken into custody as fugitives from justice and of all unidentified human corpses in their jurisdictions, but photographs need not be taken if it is known that photographs of the type listed taken within the previous year are on file. Fingerprints and other identifying data of persons arrested for offenses other than those designated in this article may be taken at the discretion of the agency concerned.
 "If any person arrested or taken into custody is subsequently released without charge or cleared of the offense through criminal justice proceedings, such disposition shall be reported by all state, county and municipal criminal justice agencies to ACJIC within 30 days of such action, and all such information shall be eliminated and removed."
(Emphasis added.)
According to §§ 41-9-590, Ala. Code 1975, "criminal justice agencies" include "public agencies at all levels of government which perform as their principal function activities or planning for such activities relating to the identification, apprehension, prosecution,adjudication or rehabilitation of civil, traffic and criminal offenders." (Emphasis added.)
This Court questions whether the legislature clearly intended the ACJIC Act to regulate how courts manage their own records. For example, §§ 41-9-642, Ala. Code 1975, prohibits disclosure of "criminal histories" to entities that do not have the "need to know" or the "right to know" of those criminal histories. Of course, judicial records have historically been considered public records. See, e.g., Exparte Consolidated Publ'g Co., Inc., 601 So.2d 423, 426
(Ala. 1992) (declining "to provide a detailed historical analysis of the progression of the cases involving the public's and the press's access to criminal proceedings," and instead referring to cases that "illustrate the development of the law in this area"). Therefore, §§ 41-9-642 provides some evidence indicating that the legislature, when it promulgated the ACJIC Act, contemplated that the Act would regulate information that was not at that time considered to be public information, i.e., records other than judicial records.
We also note that 42 U.S.C. §§ 14616, an analogous federal statute, explicitly includes "courts" in its definition of "criminal justice agencies," while the definition of that term in the ACJIC Act does not include courts. Further, §§ 41-9-645, Ala. Code 1975, which gives an individual the right to request that a criminal justice *Page 402 
agency "purge, modify or supplement" his or her records, provides for judicial review of the agency's decision on the individual's request in the circuit court. If the definition of criminal justice agencies in §§ 41-9-590(1) includes a circuit court, then §§ 41-9-645 confers upon a petitioner the hollow right to ask the circuit court to review its prior adverse ruling. That the right of appeal under §§41-9-645 is to the circuit court is further evidence that the ACJIC Act was not intended to regulate court records.
Nevertheless, consistent with the municipal court's contention on appeal, one might argue that a municipal court engages in "activities or planning for such activities relating to . . . adjudication." §§ 41-9-590(1). In other words, it is arguable that the reference to agencies that engage in "activities or planning for such activities" includes the courts themselves and not simply those agencies discharging functions ancillary to, but separate from, the courts. However, we do not expressly answer that question here because it is unnecessary to the disposition of this case. This is so because, assuming without deciding that the ACJIC Act applies here, we conclude that it in no event countenances the actions of the municipal court in this proceeding.
Based on the assumption that the ACJIC Act applies, under §§ 41-9-625, "[i]f any person arrested or taken into custody is subsequently released without charge or cleared of the offense through criminal justice proceedings" in a municipal court, that court must report, directly or indirectly, such disposition to the ACJIC. As previously noted, once the information that the person has been released without charge or cleared is reported, the second paragraph of §§ 41-9-625 provides that "all such information shallbe eliminated and removed." (Emphasis added.) We conclude that "such information" refers to "fingerprints," "full face and profile photographs," and "other identifying data," which are all mentioned in the preceding paragraph. See also §§41-9-623, Ala. Code 1975 (requiring "[a]ll criminal justice agencies within the state [to] submit to the ACJIC . . . fingerprints, descriptions, photographs . . . and other identifying data on [individuals arrested for certain crimes]"). While "other identifying data" is not defined, "theejusdem generis principle of statutory construction [aids us in determining] the intent of the legislature. Under that principle, where general words follow specific words in a statute, the general words are construed to embrace only objects similar to those objects enumerated by the specific words." Ex parte Cobb, 703 So.2d 871, 875 (Ala. 1996). Therefore, we conclude that "other identifying data" included within the "such information" required to be "eliminated and removed" by §§ 41-9-625 is information that can be used to track down and identify persons in the manner that photographs and fingerprints are used. Examples include an individual's blood type, height, weight, hair color, eye color, scars, physical deformities, etc.
Section 41-9-625 therefore does not authorize (assuming the ACJIC Act applies) the municipal court to expunge entire files. Here, the existence of, and thus all the information contained in, entire files on criminal defendants have been hidden from the public. Accordingly, §§ 41-9-625 does not support the municipal court's position.
 B.
Section 41-9-645, Ala. Code 1975, gives individuals believing their criminal records to be "inaccurate or incomplete" the right to request that the original agency having custody or control of those records purge, modify, or supplement those records, to the extent doing so would remedy *Page 403 
the inaccuracy or incompleteness.[3] Considering the import of the terms used in association with "purge" in §§41-9-645, i.e., "modify" and "supplement," we construe "purge" to mean something less than complete expungement. SeeStrickland v. General Motors Acceptance Corp.,578 So.2d 1275, 1277 (Ala. 1991) (citing "the maxim noscitur asociis, i.e., the principle that the meaning of words may be indicated or controlled by those with which they are associated"). See also Nettles v. Lichtman,228 Ala. 52, 56, 152 So. 450, 454 (1934) ("There is a well-known and ancient maxim, noscitur [a] sociis — the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it — broader in its scope than the kindred maxim, ejusdem generis, which has been given frequent application by this court."). The term "purge" means: "to make free of something unwanted." Merriam-Webster'sCollegiate Dictionary 1010 (11th ed.2003). In other words, if the ACJIC Act applies to court records, then a record that contains inaccurate or incomplete information may be purged of that information. In the instant case, the municipal court has admitted that it has not been purging, modifying, or supplementing records only to the extent needed to correct inaccuracy or incompleteness. Rather, it has simply been removing the existence of its records from public databases based on no set standard. The ACJIC Act, even if applicable, does not authorize such activity.
 IV. The Legislature's Prerogative
Whether citizens should be entitled to have their criminal arrest records expunged is a substantive matter involving policy considerations within the purview of the legislature, not this Court. Cf. §§ 12 — 15-103, Ala. Code 1975 (allowing for the sealing and destruction of juvenile court files). We take this opportunity to urge the legislature to address the policy of expunging the criminal records of adults and to clarify the applicability of the ACJIC Act to courts. It is of course the legislature's prerogative to allow expungement, to reject it, or to refuse to address the issue at all. If the legislature chooses to allow expungement, we note that important considerations include whether to require notice to the State or other prosecuting agency of the expungement proceedings, along with an opportunity to object, and the right of parties to appeal the grant or denial of an expungement request, thereby giving finality to the determination. Further, what is the legal effect of an expungement? Is a person whose record is expunged entitled to state in a job application, without risk of making a false statement, that the expunged matters, such as an arrest, did not take place? We note that the legislatures of other states have provided clear guidelines for courts to follow in determining whether to expunge the criminal records of adults. See generally Kristin K. Henson, Comment, Can You MakeThis Go Away?: Alabama's Inconsistent Approach To ExpungingCriminal Records, 35 Cumb. L.Rev. 385 (2005).
 V. Conclusion
We affirm the circuit court's permanent injunction against future "expungement," that is, removal of the existence of a criminal file from public access, by the municipal court. Although the circuit court found that MPR had not given a good reason as to why the municipal court *Page 404 
should be required to submit to the "over-broad and cumbersome" process of allowing MPR access to the expunged records, at trial, the municipal court conceded that to produce the records would not actually be overly cumbersome. Finding no justification in law for the practices of the municipal court, we reverse the circuit court's ruling insofar as it denies MPR access to the expunged records and remand the case for proceedings consistent with this opinion.
1041260 — REVERSED AND REMANDED.
1041371 — MOTION TO DISMISS DENIED; AFFIRMED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, and PARKER, JJ., concur.
STUART, SMITH, and BOLIN, JJ., concur in the result.
[1] The files MPR is seeking are kept segregated from other files but have not been destroyed. However, all indication of their existence has been removed from public record. "Expunge" is defined in Black's LawDictionary 621 (8th ed.1999) as "[t]o erase or destroy." "Expungement of record" is defined as "[t]he removal of a conviction (esp. for a first offense) from a person's criminal record." Black's at 621. "Sealing of records" is defined as "[t]he act or practice of officially preventing access to particular (esp. juvenile-criminal) records, in the absence of a court order." Black's at 1377. The records involved in this case have not been "expunged"; rather, they have been sealed. In practical effect, however, the records have been expunged because, although they have not been physically destroyed, all indication of their existence has been removed from public record. Therefore, for purposes of this appeal we treat the records as expunged.
[2] Merriam-Webster's Collegiate Dictionary 443 (11th ed.2003) recognizes "expunction," not "expungement," as the noun form. However, Black's Law Dictionary refers to expungement as an alternative noun form. Black's
at 621. Hence, we use the term "expungement" in this opinion.
[3] Section 41-9-645 does not expressly refer to "criminal records"; rather, the first paragraph of §§ 41-9-645 refers to "such information." We assume that "such information" means criminal records, which are dealt with in §§ 41-9-643, Ala. Code 1975, the section that immediately preceded §§41-9-645 when those sections were originally adopted.